German Bank *v.* Haller.

GERMAN BANK *v.* HALLER.

*(Jackson.* June 16, 1899.)

1. ACTIONS. *Right to prosecute not debarred, when.*

A creditor, who is prosecuting two distinct, concurrent actions to obtain satisfaction of the same debt from different funds of his debtor, does not lose his right to a recovery in either action by receiving the amount of his debt in the other, upon giving refunding bond to await a final decision. (*Post, p. 77.*)

2. LIMITATIONS, STATUTE OF. *Must be pleaded.*

A statute of limitations that merely bars the remedy must be pleaded to be available. The statute barring suit against sureties of a trustee after the lapse of six years from date of their principal's final settlement is of this class. (*Post, pp. 77, 78.*)

Cases cited: Hamby *v.* Reid, 101 Tenn., 438; State *v.* Butler, 11 Lea, 428; Merriman *v.* Cannovan, 9 Bax., 97.

3. APPEAL. *Taken before executing order of reference, not reversible error.*

Although the practice is irregular, it does not constitute reversible error, to prosecute an appeal from a decree fixing liability and awarding a reference to ascertain the amounts due before the reference is executed, especially where the reference was not necessary, but ordered merely for convenience in calculating amounts. (*Post, pp. 78, 79.*)

4. TRUSTEE. *Compensation.*

Where a trustee, under authority of a trust deed that is silent as to his compensation, does no more than to sell a stock of jewelry and fixtures and distribute the proceeds among a few creditors, there is no just reason or foundation for allowing him, as compensation for his services, anything in excess of five per cent. of the amount collected and disbursed. (*Post, pp. 79–83.*)

Code construed: §§ 3525, 5432 (S.); §§ 2734, 4411 (M. & V.); §§ 1976*a*–3664 (T. & S.).

German Bank *v.* Haller.

5. SAME. *Expenses of selling goods not included in trust deed.*

Goods not included in a deed of trust, but conveyed to a third party by the grantor in trust, when mingled with the stock being sold under the deed of trust, and sold by the trustee, although it appears that the selling did not interfere extensively with the sale of the trust stock, and that the additional stock was, in some measure, beneficial in enabling the trustee to keep a full line of goods, will not be entirely exonerated from the expense of the sale of the entire property, but will be required to bear their due proportion of the entire expense. (*Post, pp. 84, 85.*)

6. SAME. *Liability of sureties.*

A sum erroneously credited upon the account of a trustee may be charged back against him at the suit of the beneficiary, and his sureties may be held liable therefor, although they might, had there been no credit allowed him, have sustained no liability therefor. (*Post, p. 85.*)

---

### FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. LEE THORNTON, Ch.

PIERSON & EWING and R. P. CARY for Bank.

H. C. WARRINER, L. & E. LEHMAN, and S. J. SHEPHERD for Haller.

WILKES, J. The bill originally presented this case in a double aspect. In one view it sought to set aside a transfer of jewelry from Haller to Goodlett as fraudulent, and in the other to take under a deed of trust from Haller to

Snowden, and, in this connection, to surcharge Snowden's accounts as trustee, and charge him with other sums and refuse him credit for what is claimed to be an excessive allowance as trustee in his settlement with the County Court. The bill was filed May 25, 1896, and on July 7, 1896, that part of it assaulting the transaction between Haller and Goodlett was dismissed and is now being prosecuted in a different action, leaving for determination in this case only the correctness of Snowden's account as trustee as passed in the County Court.

The bill at the same time was so amended as to make the action stand in the name of the State for the use of the bank and all other creditors of Haller who might choose to come in under the proceeding and who were beneficiaries in the trust deed made by Haller to Snowden, and is a suit on the bond.

The specific errors pointed out in the account of Snowden are (1) that he retained 10 per cent. upon the amount of money received by him and paid out under the trust, as compensation as trustee, and it is insisted that 5 per cent. is a reasonable compensation and the amount fixed by statute, if he should, under the facts, be allowed anything. (2) That Snowden, while acting as trustee for Haller, at the same time, and in connection with the sale of the assigned goods, sold those transferred to Goodlett, and hence

a portion of the expense incurred in the sales should have been borne by Goodlett and not by the trust assets.

The expense which complainant insists should be shared by both is confusedly stated in the brief as advertising, clerk's hire, and light, but evidently it is intended to charge advertising, salaries, rents, and incidentals, inasmuch as it gives the total of the items as $5,257.64. It is insisted that this sum should be apportioned between the two funds in proportion to their amounts respectively.

The Chancellor held that the assignee or trustee should have retained only 5 per cent. instead of 10 as compensation, and gave recovery for half of it and interest, and upon the other item that there should be a recovery for $807.88, and for these amounts, aggregating $2,676.47, he gave judgment against the trustee and Goodlett and Frank, his sureties.

The theory upon which the Chancellor found the item of $807.88 was that Snowden, the trustee, had been paid $850 by Goodlett for his services about the goods transferred to him, and this amount, less a commission of 5 per cent., represented profit which Snowden had made in attending to and selling Goodlett's goods, while at the time he was under obligation to give his services to the execution of the trust. He treated

this $807.88, therefore, as profits made by Snowden while trustee, to be accounted for as such.

All parties in interest are before this Court, either by appeal or writ of error, and the two items referred to are the matters in controversy. Some collateral matters are presented bearing upon the main contentions.

It is said that the German Bank has received the amount due it, and is therefore no longer interested or entitled to any recovery. The fact appears to be that under the other proceeding to set aside the transfer from Haller to Goodlett, the bank has been paid its claim, but it has been required to give a refunding bond to await the final decision of its right to hold the fund, and that controversy is still pending, so that this assignment is not well taken.

It is said that in the next place there are only three other creditors of Haller who have come in under the proceeding, and that their claims are barred by the statute of limitations of six years from the passing of the trustee's accounts.

This Court has recently held, in the case of *Hamby* v. *Reid*, 101 Tenn., 438, that the statute of limitations in favor of the sureties of a trustee commences to run when the trustee ought to have completed his trust and paid over the funds, and the right of action against them is barred within six years from that date. In this case the trustee passed his ac-

counts June 20, 1892, and the statute then be-
gan to run so that the debts claimed by Fried-
man and Weiss would be barred, not having been
filed in this proceeding for more than six years
thereafter. The debt of Kling was filed within
the six years. But it appears that these debts
were filed without objection, if not by agreement,
and there was no plea of the statute and no
objection on that account until the case reached
this Court. This is too late. The statute must
be pleaded in the Court below if it is relied
on. *State* v. *Butler,* 11 Lea, 428; *Merriman* v.
*Cunnovan,* 9 Bax., 97. The assignment upon this
ground is not well made.

It is said, however, that conceding there are
some debts against Haller represented in the pro-
ceeding, still the amount of the debt is not ascer-
tained, but in the decree fixing the liability of
the defendants there is a reference to ascertain
the amounts. The argument is, that no more can
be recovered in any event than would be sufficient
to pay these debts, and it might turn out, on
the execution of the order, that the debts did
not amount to as much as the liability declared.
On looking to the record, it appears that these
debts of the creditors are not disputed, that they
are evidenced by notes or judgments, and the ag-
gregate amount is equal to, if it does not exceed,
the amounts for which defendants are held liable.

An order of reference was not necessary in

German Bank *v.* Haller.

this case, as the amounts of the debts could be ascertained by a simple calculation, but it was no doubt a matter of convenience. The order should have been executed before the appeal was allowed, but this, we think, is not reversible error.

As to the main item of error, to wit, the compensation which should have been allowed the trustee, it appears that some proof was taken.

Snowden, the trustee, says the amount allowed of ten per cent. was reasonable and just for the services rendered and amount involved. Mr. Gregory, an attorney of the Memphis bar, says substantially the same thing. Mr. Crenshaw was examined by defendants, but declined to give his opinion. Mr. McHenry was examined by defendants, and said the allowance was excessive, and that five per cent. would be right and fair.

Of all these witnesses Mr. McHenry, from his habits, training and business capacity, and the fact that he was disinterested, is most competent to speak. He had been Clerk and Master six years, Deputy Clerk and Master fifteen years, and had constantly to pass upon questions of this kind. He was when examined in active business as cashier of a bank, and his opinion is entitled to much weight. Still his statement, as well as all others, must be treated as mere opinions, and not conclusive.

It appears the goods which went into the

hands of the trustee invoiced, including fixtures, $40,127.59, and that the trustee realized out of this the sum of $26,976.72.

It appears that the gross expenses were $11,-420.90, of which $3,248 was for clerk's hire and auctioneer's fees. It appears also that the trustee made for the trust fund some profit upon a release of the store house, stated by him to be $800, but exactly how this went into the trust fund does not appear, unless it is embraced in an item of $1,665.83, credited to the fund and charged to the trustee as stock of goods, lease, etc. In his testimony the trustee appears to state that this entire item was for new goods bought and added to stock.

It further appears that on these goods he made a profit of $150; that he sold the fixtures for $1,125, which were invoiced at $4,500; that he realized from sales of merchandise $24,801.72, which had cost $32,388.72. He further testifies as to faithfulness to his duties, and care and attention bestowed for about six months in the execution of the trust.

The trust deed is silent as to the amount of compensation, but simply provides to pay first the costs and expenses of executing this trust. It is not insisted in this case that the trustee's compensation is not included in costs and expenses, and for the purposes of this controversy we assume it is so included.

We think that certain rules may be laid down, not perhaps as inflexible, but as serving to govern in fixing the compensation of trustees under assignments.

1. Where the compensation is fixed in the instrument, that will control if not illegal or unreasonable.

2. Where the instrument provides for reasonable compensation, it is a matter for the Court upon proof and a consideration of all the facts.

3. Where the instrument is wholly silent as to compensation, the statutory allowance to Clerks and Masters for similar services obtains, unless the Court in its discretion may decree otherwise on the facts.

The statute bearing upon the compensation of trustees under deeds of trust is found in Shannon's Code as Sec. 3525, and is as follows: "The County Court upon application, or the Chancery Court if the trust is administered in the Chancery Court, may allow a trustee or assignee compensation exceeding the compensation of Clerks and Masters if the character of service rendered entitle him to the same in the opinion of the Court, but which in no case shall exceed five per cent."

This is virtually duplicated by Sec. 5432, the closing paragraph being, "but in no case shall the compensation exceed five per cent."

It will be noted that these sections do not

19 P—6

state upon what amount the five per cent. is to be computed.

Section 5432 uses the language, "Trustees receive the same fees for selling and collecting as are allowed Clerks and Masters," etc. Whether this per cent. is to be computed upon the actual receipts, or upon the gross property conveyed, is not stated.

It is obvious that the gross amount of property may be, and it generally is, greatly in excess of the actual amount realized by sales or collections, and yet the insolvent and uncollectible assets may furnish the chief ground of labor and service rendered by the trustee. It is a matter of common observation that trust assignments more than all others contain insolvent, doubtful, and uncollectible claims, and yet such claims require the utmost diligence and greatest labor to make them available, and not to give such service would be a dereliction of duty on the part of the trustee.

We are of the opinion that while the statute fixes a maximum limit of compensation for selling and collecting of five per cent., yet there may be other service required by the terms or nature of the trust, not embraced in sales and collections, for which the trustee should be allowed some compensation, such as the renting of lands, the attention given to insolvent claims, the gathering of crops, attention to litigation, and other services that the particular assignment or trust may

require. Evidently, when the statute referred to the compensation as being fixed on the basis of that allowed Clerks and Masters, it meant for such services as Clerks and Masters usually are called on to perform, that is, sales and collections, and when there are other and further services, they may receive an additional compensation. In this particular case, while the invoice or schedule of property assigned amounted to $40,127.59, it appears that it was a stock of jewelry and fixtures which were only required to be sold, and the proceeds paid upon a few debts after paying expenses. And we are not able to see that any service was required except to sell this property, receive the money and pay it over, and there is, therefore, no reason to depart from the rule which the statute lays down of a maximum of five per cent. for selling and collecting. This makes a compensation of $1,349.83 as allowed by the Chancellor, or about $225 per month, and all expenses paid, while the amount claimed is twice that sum, or $450 per month, or $5,400 per year.

We are therefore of opinion the Chancellor's decree is correct and equitable so far as this item is concerned.

As to the item of $807.88 we are of opinion this cannot be sustained upon the ground upon which the Chancellor seems to have put it, which is that while engaged in selling this stock of

goods the trustee engaged in selling other goods from which he was entitled to receive that sum as compensation.

We know of no good reason why a trustee, engaged in executing a trust and selling goods thereunder, may not also engage in a separate and distinct business that does not interfere with or detract from his duties and services in regard to the former. It may be a circumstance to look to in determining what his compensation should be for the execution of his trust if it interferes with it, but it is not an item which would swell the assets of the trust. But while this is true, it is also, as we think, plain that if expense is incurred about both businesses jointly, it should be borne by each in proper proportion, and the entire burden should not be borne by the trust goods to the exoneration of the other stock. The items in this case for advertising, salaries, incidentals, and store rent were incurred for both stocks, amounting to $5,257.64, and should have been borne in some proper proportion by each. It is argued, however, that the greater part, if not all, of this expense would have been incurred if the Goodlett stock of jewelry had never been mingled with the trust stock, and that the addition of the Goodlett stock not only did not increase the expense of the trust stock, but was a benefit to it in keeping up a full line of goods, and thus enabling the trustee to work

off to better advantage the trust stock. While it is evident this must have been to some extent the case, it is also evident that it must also have had some injurious effect so far as persons coming to the store would make their selections and purchases from the Goodlett stock instead of the trust stock. The complainant insists that at least $1,544.62 should be charged up as the proper proportion of the Goodlett expense, while the defendants insist that nothing should be charged. We are of the opinion that about half the amount claimed by complainant should be treated as Goodlett expense, and as this is about equal to the amount of the item allowed by the Chancellor upon a different ground, we are content to fix it at that figure, and affirm this item of $807.83, but on the ground herein stated.

This virtually disposes of all the errors assigned. It is said this suit being on the bond, the sureties cannot be made liable especially for the item of $807.88, as that is an item not covered by the bond. If we were to concede this to be so upon the ground that it was placed by the Chancellor, that objection does not obtain to it treated as an erroneous credit allowed in the trustee's accounts; having been erroneouly credited, the beneficiaries are entitled to charge both items back against the trustee on his official account, and the liability of the surety follows as a matter of law.

German Bank *v.* Haller.

It appears that another suit is also pending to collect the debts due the bank and other creditors entitled under this bill from Mr. Snowden, on the allegation of a fraudulent receipt of goods from Haller. Suffice it to say there can be only one satisfaction, but the matter is not before us in such shape at this time as that we can see these creditors will have their debts satisfied in those suits, and so we can make no further order or decree at this time.

The decree of the Court below is affirmed with costs.