BRADFORD *v.* RAGSDALE *et al.**

(*Nashville,* December Term, 1938.)

Opinion filed April 1, 1939.

---

*This case reprinted and annotated in 121 A. L. R., 1506.

C. H. RUTHERFORD, of Nashville, for plaintiff in error.

JAMES W. STOKES, of Nashville, for defendants in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

Mrs. Sammie Mays Bradford, on inquisition proceedings instituted by her brother, S. L. Mays, under Chapter 17, Public Acts 1919, was, on June 7, 1938, adjudged of unsound mind by the County Court of Davidson County and committed to the Central State Hospital. At the same time the court appointed the American National Bank, of Nashville, guardian of her estate, which exceeds $500 in value and said guardian duly qualified and is now serving in that capacity.

On December 2, 1938, Mrs. Bradford, by her husband, S. D. Bradford, as next friend, filed her petition in said county court alleging that she was sane, and asked the court to have her competency to liberty and to the management of her property restored. Issue was joined as to her sanity and the case submitted, upon proof, to the county judge, sitting without a jury, who decreed, in part, as follows:

"The Court further holds that under section 9656 of the Code that this petition is proper, if the said Sammie Mays Bradford has been restored to her sanity since her commitment.

"But the Court finds that the great preponderance of the evidence on this hearing shows that petitioner's mental condition is the same as when committed. Among the witnesses examined being Dr. Ragsdale, Dr. Love, and Dr. Winters, physicians on the Staff of said Hospital, all of whom testified that petitioner was still insane and that it was to her best interest that she continue to be confined in said Hospital, and the great preponderance of the testimony of the lay witnesses introduced on the hearing also shows that petitioner is still insane. And the Court finds as a fact that petitioner is still insane and should continue to be confined.

"It is, therefore, ordered, adjudged and decreed by the Court that said petition be and the same is dismissed."

From the foregoing decree an appeal was prayed, granted, and perfected to the circuit court where, upon motion, the appeal was dismissed, the court being of the opinion that the appeal should have been taken to the Court of Appeals.

The case is now in this court upon the appeal of the

petitioner, her insistence being that the circuit court committed error in dismissing her appeal.

It was the theory of the trial court that since the value of petitioner's property exceeded $500 the chancery and county courts had concurrent jurisdiction to entertain a petition asking for restoration, and that the appeal should have been taken to the Court of Appeals.

The sections of the Code bearing upon the question of jurisdiction in this character of case are as follows:

9028. "Any party dissatisfied with the sentence, judgment, or decree of the county court, may pray an appeal to the circuit court of the county, unless it is otherwise expressly provided."

9029. "In all cases in which the jurisdiction of the county court is concurrent with the circuit or chancery courts, or in which both parties consent, the appeal lies direct to the court of appeals or supreme court, as the case may be."

9613. "Jurisdiction over the persons and estates of idiots, lunatics, and other persons of unsound mind, is intrusted to the county and chancery courts."

9622. "The application to the chancery court shall be by petition, verified by affidavit, setting forth the facts in regard to the person and property of the supposed idiot or lunatic."

9623. "No application shall be made to the chancery court, unless the estate exceeds five hundred dollars, and the fact shall be so stated in the petition."

9656. "When any person shall be declared a lunatic, or person of unsound mind, as provided by law, and afterwards become restored in mind, such person may by petition set forth the fact of his restoration to the county judge or chairman of the county of which he is a res-

ident, and said judge or county chairman shall hear and determine all such cases brought before him.''

9659. ''If the county judge or chairman should be of opinion that the petitioner is of sound mind and competent to control himself and property, the court shall pronounce a decree declaring such person of sound mind, and the guardianship of said person, if any exist, shall terminate; and he may demand settlement of the guardian.''

■ We hold that the proper practice to have the decree of the county court reviewed in a restoration case is by appeal rather than by *certiorari.* It is fully established that a party adjudged to be of unsound mind is entitled to appeal. *Harmon* v. *Harmon,* 141 Tenn., 64, 206 S. W., 333; *Davis* v. *Norvell,* 87 Tenn., 36, 9 S. W., 193; *Fentress* v. *Fentress,* 54 Tenn. (7 Heisk.), 428; *Cooper* v. *Summers,* 33 Tenn. (1 Sneed), 453. We think the statute authorizing such an appeal likewise sanctions an appeal in a restoration case.

■ It is insisted by the defendants that since the chancery and county courts have concurrent jurisdiction in inquisition of lunacy proceedings, where the value of the estate exceeds $500, that they also have concurrent jurisdiction to restore competency; and that in the instant case the petition for restoration could have been filed in either court. But the statute does not so provide, but confers jurisdiction only upon the county court. Chapter 149, Public Acts 1887, likewise conferred jurisdiction in such a proceeding upon the county court.

Mr. Gibson in his Suits in Chancery (2 Ed.), after stating the jurisdiction of and proceedings in that court relative to the persons and property of those who are of unsound mind, concludes section 983 with this statement:

"Should the defendant afterwards become restored in mind, he may, on application by petition to the County Court, have a jury appointed to inquire into the condition of his mind; and if found of sound mind, and competent to control himself and property, the Court will declare him of sound mind; and the guardianship of his person and property thereupon ceases, and he may demand a settlement of his guardian." Citing Chapter 149, Acts 1887.

In 32 C. J., page 684, it is said:

"The jurisdiction to determine the question of restoration to sanity is usually governed by the statute. It has been held that a court of equity independent of statute has inherent power to discharge a person committed to an asylum."

The paragraph just quoted is supported by the case of *State ex rel. Martin* v. *Superior Court for King County,* 101 Wash., 81, 172 P., 257, 4 A. L. R., 572. That case, however, is contrary to the decisions of this court, it having been held as far back as 1849 that the chancery court had no inherent jurisdiction of the person or estate of a lunatic. *Lewis* v. *Moody,* 149 Tenn., 687, 261 S. W., 673; *Oakley* v. *Long,* 29 Tenn. (10 Humph.), 254.

As to whether, under the statute, there is an implied power conferred upon the chancery court to restore sanity where the original inquisition proceeding was had in that court we find it unnecessary to decide in this case. What we do hold is that since the petitioner was adjudged of unsound mind and a guardian was appointed to manage her estate by the County Court of Davidson County that the petition for restoration was properly filed in that court, and that the chancery court

would have had no jurisdiction to determine the controversy.

With respect to a proceeding to restore sanity, we quote from 32 C. J., page 673, as follows: "the application should be made to the court which exercised the original jurisdiction." And again, on page 674, it is said: "An application for restoration to sanity is not a new proceeding; it is a continuation of the original guardianship proceeding." As stated by the Supreme Court of Alabama in *Pope* v. *Bolin,* 224 Ala., 322, 140 So., 382, 384: "As related to the guardianship the proceeding to revoke may be considered a part of and in the nature of a continuance of the original proceeding."

We conclude, therefore, that the chancery and county courts did not have concurrent jurisdiction to restore petitioner, but that such jurisdiction was vested exclusively in the county court. That being true, the appeal should have been to the circuit court rather than to the Court of Appeals.

It follows that the judgment of the circuit court will be reversed and the case remanded to that court for a hearing upon the merits. The costs of the appeal will be paid by the guardian. Other costs will be adjudged upon the final hearing.