JUSTICE v. MORRIS et al.—143 S. W. (2d) 105.

Western Section.   March 8, 1940.

Certiorari Denied by Supreme Court, June 8, 1940.

Rehearing Denied, June 29, 1940.

A. Bradley Frazier, of Camden, for C. N. Frazier, guardian.

Goodpasture & Carpenter, of Nashville, for Commerce Union Bank, guardian of W. P. Morris, non compos mentis.

KETCHUM, J.   The only question raised on this appeal is with reference to the compensation of C. N. Frazier for his services as guardian of his ward, William P. Morris, a non compos mentis. He has settled in full with the Commerce Union Bank of Nashville, his successor as such guardian, for all the assets which came into his hands except the balance claimed on account of his compensation amounting to $935.15.

The matter was referred to the clerk and master to hear proof and report as to his compensation, and the master upon the proof submitted reported that $1,500 would be a fair and reasonable compensation for the services rendered, of which amount sums totalling $564.85 had been allowed as credits in his annual settlements, leaving a balance of $935.15 to which he was justly entitled. The Commerce Union Bank, the successor guardian, excepted to the report insofar as it allowed him this additional compensation, upon the ground that the unusual services rendered for which the additional compensation is claimed enured to the benefit of the Hartford Accident and Indemnity Company, the surety on the bond of the Peoples Bank & Trust Company, his predecessor as guardian of said ward. The chancellor sustained this exception and disallowed the claim for additional compensation, and from this decree Frazier has appealed and assigns error.

A brief history of the guardianship from the beginning will be helpful in passing upon the question to be determined.

A. S. Justice was first appointed guardian of the said William P. Morris and his three sisters, the minor children of W. L. Morris, deceased, in the county court of Benton County, in February, 1919, and handled said guardianship until after the said William P. Morris became of age on the ――――― day of October, 1926.

On October 26, 1926, upon the oral application of the Peoples Bank & Trust Company, of Camden, an order was entered in the county court of Benton County, adjudging that the said William P. Morris was of unsound mind, and appointing the said Peoples Bank & Trust Company as his guardian; its bond as such guardian was fixed at $16,000, and it qualified by making bond with the Hartford Accident & Indemnity Company of Hartford, Connecticut, as its surety; and shortly after its qualification the Peoples Bank & Trust Company made demand upon the said A. S. Justice, guardian, for a settlement of the amount due his said ward.

The said A. S. Justice, guardian, thereupon filed his bill in the chancery court of Benton County against the said W. P. Morris, E. E. McDaniel, administrator with the will annexed of W. L. Morris, deceased, and the Peoples Bank & Trust Company, setting out the facts as above related, and alleging that he was ready and willing to make his settlement as such guardian, but that he was afraid to settle with the Peoples Bank & Trust Company as such guardian because the said William P. Morris had never been legally adjudged to be of unsound mind, and because the appointment of the Peoples Bank & Trust Company as his guardian had been made without any notice to the said W. P. Morris or to complainant as his guardian. He alleged that the said William P. Morris was as a matter of fact feeble minded or of unsound mind, that he had an undivided interest in certain real estate described in the bill, as well

as the assets in his hands as guardian; and he prayed for an inquisition of lunacy to inquire and ascertain whether the said William P. Morris was a person of unsound mind; and that his rights in his father's estate in the hands of E. E. McDaniel administrator with the will annexed be settled, that his interest in the real estate be sold, and that complainant be permitted to make his settlement as guardian and be discharged in the chancery court.

The said William P. Morris was legally adjudged to be of unsound mind in this proceeding, the guardianship was transferred to the chancery court from the county court, the Peoples Bank & Trust Company was appointed as guardian of said ward, with the Hartford Accident & Indemnity Company as surety, the interest of the ward in the real estate was sold, and the complainant A. S. Justice made his final settlement with the Peoples Bank & Trust Company, guardian, and was finally discharged.

The Peoples Bank & Trust Company served as guardian until it failed and was placed in the hands of the superintendent of banks, as receiver, in October, 1930. Shortly thereafter the Hartford Accident and Indemnity Company, as the bank's surety, filed its petition in said cause asking that the said Peoples Bank & Trust Company be discharged as guardian and that the Commerce Union Bank of Nashville be appointed as such guardian in its stead. The Commerce Union Bank declined to qualify, giving as its reason that the assets of the estate consisted largely of notes and county warrants which were not securities in which guardians are authorized to invest the funds of their wards, that the receiver of the bank was refusing to turn the assets over to it, and that on account of the unsettled condition of the estate and the likelihood of litigation, it desired to be relieved of said appointment, and suggested the appointment of C. N. Frazier as such guardian.

Thereupon the Hartford Accident & Indemnity Company also filed its petition in said cause setting out the above facts, and the refusal of the Commerce Union Bank to qualify as such guardian and praying that C. N. Frazier be appointed as such guardian. Frazier was appointed in accordance with the prayer of this petition on March 9, 1932, and executed his bond in the penalty of $16,000 with the Hartford Accident & Indemnity Company as his surety on March 12, 1932.

His inventory filed at the November term, 1932, shows that up to that time there had come into his hands the sum of $3,137.02 from the clerk and master, the proceeds of the ward's interest in the real estate sold, and that he would receive approximately $2,000 more from that source. He exhibited with his inventory a copy of the settlement of the Peoples Bank & Trust Company filed on August 10, 1930, which showed that the bank had in its hands as such guardian at that time the further sum of $7,971.01, but that this

had not come into his hands as there was a controversy over the disposition thereof which was still pending.

The controversy here referred to grew out of the claim of the receiver of the bank that these assets belonged to the bank and that the bank as guardian was a general creditor of the defunct bank. This litigation was finally determined in this court in favor of the guardian. The assets which came into Frazier's hands from this source consisted of county warrants, real estate notes which had been purchased by the bank as guardian without authority from the court, and without an appraisal of the property on which the loans were made. Practically none of the assets which came into his hands from the bank were securities in which a guardian is authorized to invest the funds of his ward, and it was for this reason, and because of the likelihood of a prolonged litigation in realizing on the assets, that the Commerce Union Bank declined to qualify as guardian of said ward when requested to do so.

Frazier served as guardian until May 16, 1936, when he resigned, and, at his request, the Commerce Union Bank of Nashville qualified as his successor, and he made his settlement with it. The Commerce Union Bank in this settlement accepted such of the assets in his hands as consisted of cash and investments which were expressly authorized by statute. In this settlement it received the sum of $4,620.32 from the Hartford Accident & Indemnity Company in settlement of its liability as surety on the bond of the Peoples Bank & Trust Company, as guardian, in accordance with a decree of the chancery court in this cause; and numerous other sums which Frazier had realized from the assets which he had received from the bank's receiver.

The record shows, and we understand that it is conceded, that Frazier was diligent in collecting the assets which came into his hands, and it is not contended that he is not entitled to be compensated for his services; but the contention is that his services were rendered for the benefit of the Hartford Accident & Indemnity Company, as surety, and that he should be compensated by that company and not by his ward. We think this true. The surety company was solvent and he was not required to accept the illegal or unauthorized investments made by the bank for its ward, and it is clear that he qualified as guardian at the instance of this surety with a view to realizing as much as possible out of the assets in the hands of the bank for the protection of the surety.

He insists that the court should take into consideration the fact that the services of an attorney were required in the collection of the assets collected by him, and that these services were rendered by him without employing outside counsel, and that on this account he should receive more than the usual and customary compensation allowed to a guardian; and he relies upon the case of Holding v.

Allen, 150 Tenn., 669, 226 S. W., 772, as sustaining this contention. We do not think the case is in point because in that case the estate in the hands of the executor was threatened, and the employment of counsel was necessary for the preservation of it; while in the case at bar the services of the attorney were rendered to realize as much as possible on the assets so as to minimize the liability of the surety.

While the court in the Holding case did take into consideration the valuable services rendered by Judge Holding in the preservation of the assets of the estate in which he was executor, it was made clear that an executor who happens to be an attorney was not entitled to compensation for legal services rendered the estate in addition to his compensation as executor; and the case of Fulton v. Davidson, 50 Tenn. (3 Heisk.), 614, which had so held was overruled.

Frazier admits that most of the services for which he claims additional compensation were rendered by him as attorney and not as guardian. He says:

"Q. Most of the services for which you claim this extra compensation came about for your services as an attorney, does it not? A. I would say so, yes, sir."

Frazier sued the Hartford Accident & Indemnity Company for services rendered in realizing on assets which came into his hands from his predecessor guardian, the Peoples Bank & Trust Company, in this case and in another similar case known as the Lindsey case, and received by way of compromise the sum of $1,534 in settlement for the services rendered in the two cases. It does not appear from the record what part of this amount was for the services rendered in the present case.

It thus appears that Frazier has received compensation from the Hartford Accident & Indemnity Company, as surety, for services rendered in realizing on the same assets which came into his hands as guardian; and that he is now seeking compensation from his ward for these same services. As we view it, the services rendered by him, outside of the routine ruties of a guardian, enured to the benefit of the Hartford Accident & Indemnity Company, the surety on the bond of the Peoples Bank & Trust Company, and that his compensation should be paid by that company.

It was within the sound discretion of the chancellor to fix the compensation of the guardian, and in the absence of a clear abuse of that discretion it is not within the province of this court to review his action. Matlock v. Rice, 53 Tenn. (6 Heisk.), 33, 38.

In the present case we concur in the conclusion reached by the chancellor and accordingly affirm his decree at the cost of appellant and his sureties.

Anderson, J., and Adams, Special Judge, concur.