# AMERICAN NAT. BANK v. BRADFORD.—188 S. W. (2d) 971.

Middle Section.   February 24, 1945.

Rehearing denied March 31, 1945.

Petition for Certiorari denied by Supreme Court, June 30, 1945.

240

W. A. Guild and C. H. Rutherford, both of Nashville, for appellant.

Bass, Berry & Sims and James W. Stokes, all of Nashville, for appellee.

FELTS, J. The American National Bank, guardian of Mrs. Sammie Mays Bradford, a mental incompetent, brought this suit to sell her real estate to pay for her

maintenance at the Central State Hospital for the Insane and other expenses of the guardianship. The chancellor decreed this relief. Mrs. Bradford, having meanwhile been adjudged restored in mind, appealed from the chancellor's decree. The pertinent facts are these:

Mrs. Bradford, age 63, and her husband, age 80, were living on her farm in Davidson County. She had trouble with some of her neighbors, and one of them had her arrested on a peace warrant. She made bond, returned home, and that night his home was burned. The State fire marshal and officers investigating the fire caused her to be arrested on the charge of arson. While she was in jail on this charge her brother, S. L. Mays, undertook to assist her and employed a lawyer, Mr. James W. Stokes, who advised him to have her examined as to her mental condition. He had such an examination made by Dr. J. P. Gilbert, a psychiatrist, and Dr. J. J. Lentz, health officer of Davidson County. They reported she was insane and should be confined in an institution for the care of the insane.

Mays thereupon instituted an inquisition of lunacy in the County Court of Davidson County. Upon the hearng on June 7, 1938, that court adjudged Mrs. Bradford to be insane, committed her to the Central State Hospital as a private pay patient, Code, sec. 4440, and appointed the American National Bank as her guardian, Id., sec. 4478. There was no appeal from that judgment, she was taken to the Central State Hospital, and the charge of arson was dropped.

She had two adjacent tracts of land totaling 148 acres and a small amount of personalty consisting of $81.12 in bank, $150 in United States bonds, some household goods, farming implements, and livestock. The guardian took charge of this property; and, under an order of the

county court, sold the goods, implements, and livestock for a total of $366.30. The charge for her maintenance at the hospital was $100 each quarter payable in advance. The guardian paid this and other expenses until it appeared the fund would soon become exhausted.

Attending physicians advised that Mrs. Bradford was incurably insane but otherwise in good health and would probably live many years in her condition requiring continued maintenance and support of her at the Central State Hospital. She had no child and her husband was unable to provide for her support and maintenance. So on November 2, 1938, the guardian filed the original bill in the present suit, setting out these matters, exhibiting its account showing a balance of $286.69 in its hands, and alleging that the attorney's fee in the lunacy proceeding and other expenses of the guardianship had not been paid. The bill also alleged that the ward's land had not been cultivated in several years, had grown up in bushes and trees, was encumbered by unpaid taxes, and was incapable of producing any income; and that it was necessary to sell the land in order to pay the debts already accrued and to provide for the continued support and maintenance of the ward at the Central State Hospital.

Mrs. Bradford, through her husband as next friend, filed a petition December 2, 1938, in the County Court of Davidson County, attacking the lunacy proceedings and the appointment of the guardian and seeking in the alternative to be adjudged restored in mind and released from the hospital. Finding her still insane, the county judge dismissed her petition. She appealed to the circuit court and that court dismissed her appeal upon the ground that it should have been to the Court of Appeals. The Supreme Court reversed and remanded for a hearing on the merits.

Bradford v. Ragsdale, 174 Tenn. 450, 126 S. W. (2d) 327, 121 A. L. R. 1506. There was such a hearing February 26, 1940, the jury found her sane, and the court adjudged that she be restored as sui juris and released, that she settle with her guardian, and that it settle with her.

But she did not settle; instead she filed a bill June 6, 1940, in the Chancery Court, Part II, of Davidson County, to have the lunacy proceeding and the appointment of the guardian declared void; to recover of the guardian all that had come into its hands, including what it had paid out for her support and maintenance and for other expenses of the guardianship; and to enjoin it from further prosecuting the present suit, which was pending in the Chancery Court, Part I. The chancellor dismissed her bill and this Court affirmed his decree. Bradford v. American Nat. Bank et al., 25 Tenn. App. 413, 158 S. W. (2d) 366. Certiorari was denied February 7, 1942.

On February 27, 1942, the guardian filed a supplemental bill in the present case, referring to the other suits and the steps that had been taken in this one, and alleging that the guardian had disbursed all of the ward's personalty except $9; that it was indebted in the sum of $500 to the Central State Hospital for her maintenance and further indebted for other necessary expenses and for costs and attorney's fees in the other litigations; that since her restoration she had refused to pay any of said indebtedness and had sought to avoid payment by mortgaging her land for $800 and later transferring the land to Nevada Lucas, who was joined as a defendant. The prayer was that these conveyances be declared void and that the land, or enough of it, be sold to pay these debts so the guardian could make final settlement.

Mrs. Bradford had answered the original bill August 12, 1940, asserting the guardian's appointment was void

and denying its right to prosecute this suit. On April 1, 1942, she demurred to the supplemental bill and later moved to dismiss the suit. The substance of her demurrer was that her restoration had ended the guardianship and deprived the court of jurisdiction in this cause, that the supplemental bill was multifarious, that there was an adequate remedy at law for enforcement of any of these claims against her which were valid. The ground of the motion to dismiss was that upon her restoration the guardian had no power or duty to do anything except to make final settlement by restoring all of her property to her. The demurrer and motion were overruled with leave to rely on these matters in her answer. She later answered, setting up these same matters and denying that the original or the supplemental bill showed any necessity for a sale of the land.

On August 26, 1942, the State filed an intervening petition asserting its claim for $490, plus interest, for maintenance of Mrs. Bradford at the Central State Hospital. This petition stated that her attorneys had sent to Assistant Commissioner of Institutions, a certified check for $250 in full payment of the claim, with a letter stating Mrs. Bradford had sold her farm and nothing could now be made out of her; but that on investigation he had found that the Tennessee Title Company in order to protect itself on its guaranty of the title of the land to the purchaser had required Mrs. Bradford to deposit with it a large part of the proceeds of the sale, including $500 for the State's claim, which sums the company was holding under an escrow agreement; and that therefore the State had declined to accept the check in full of its claim.

On January 4, 1943, Mrs. Bradford answered the petition, reiterating her attack upon the lunacy proceeding

and the guardian's appointment as void, and alleging that the State had engaged in a conspiracy to deprive her of her liberty and property by resisting her petition for restoration and having the doctors at the Central State Hospital testify against her in that proceeding; that she was not indebted to the State for keeping her at the Central State Hospital under these circumstances; and that the State had retained the $250 check, which was an accord and satisfaction of the claim.

The cause was heard orally according to the forms of chancery, and the chancellor filed an opinion that complainant was entitled to the relief sought. Accordingly he entered a decree setting out the respective amounts of the debts and directing a sale of the land if they were not paid in 60 days. These debts were: (1) $490 to the State for maintenance of Mrs. Bradford at the Central State Hospital; (2) $500 to James W. Stokes as attorney's fee for representing the guardian from June 7, 1938, to date; (3) $200 as reasonable compensation to the guardian; (4) $90 for premiums paid by the guardian for its bond; (5) $150 to Bass, Berry and Sims as an attorney's fee for representing the guardian in Bradford. v. American National Bank et al., 25 Tenn. App. 413, 158 S. W. (2d) 366; (6) $25 to Joe L. Jenkins for services as guardian ad litem in the present cause up to the time of Mrs. Bradford's restoration.

Appellant has assigned numerous errors, which present these propositions: (1) The court had no jurisdiction of her person because no process was served on her; (2) the decree ordering a sale of her land is void because the bill stated no cause for such a sale; (3) the judgment restoring her as sui juris terminated the guardianship and the guardian's right to maintain this suit, made it the guardian's duty immediately to make final settle-

ment by restoring all her property, and ousted the court's jurisdiction of this cause; (4) she was improperly denied a trial by jury; (5) the State accepted the $250 check as an accord and satisfaction of its claim; and (6) none of the claims allowed should have been allowed.

Appellees, in reply to these propositions, insist that the decree in Bradford v. American National Bank et al., 25 Tenn. App. 413, 158 S. W. (2d) 366, is res adjudicata or an estoppel by judgment against appellant upon these matters. In equity res adjudicata or estoppel by judgment, whether relied on by defendant as a defense or by complainant as a part of his cause of action or to preclude a defense, must, with certain exceptions not here material, be pleaded and must be proved. Turley v. Turley, 85 Tenn. 251, 1 S. W. 891; Jourolmon v. Massengill, 86 Tenn. 81, 5 S. W. 719. For such exceptions see: Douglas v. Douglas, 156 Tenn. 655, 4 S. W. (2d) 358; Hicks v. Hicks, 26 Tenn. App. 641, 652, 176 S. W. (2d) 371, 375.

While complainant undertook to plead the decree in the former cause as res adjudicata in this cause, it did not support the plea by proof; it merely referred to the opinion but did not introduce a copy of the record in that case as evidence in this case. Though there are some authorities to the contrary, it is quite generally held that in order to prove a plea of res adjudicata it is necessary to put in evidence the record or a copy of the record of the former case. Clariday v. Reed (Tenn. Chy. App.), 53 S. W. 302, 307; Annotation, 96 A. L. R. 944; 30 Am. Jur. 993.

It is true if a copy of the record in Bradford v. American Nat. Bank et al., supra, had been introduced in evidence in this case before the chancellor, we could look to our opinion in that case as part of such record to aid in

determining what was there adjudged. Moore v. Chattanooga Electric R. Co., 119 Tenn. 710, 109 S. W. 497, 16 L. R. A. (N. S.), 978. But no such copy having been introduced, we cannot look to that opinion to support the plea of res adjudicata or estoppel by judgment. A court may take judicial knowledge of facts which it has learned on an earlier hearing of the same case, Davis v. Robertson, 165 Tenn. 609, 614, 56 S. W. (2d) 752, 753; Carmack v. Fidelity-Bankers Trust Co., 180 Tenn., 571, 575, 177 S. W. (2d) 351, 322, and in other cases courts of course do take judicial notice of published opinions of their own and of other courts, but they do so to ascertain the law and to apply the principle of stare decisis but not to supply the proof of res adjudicata. Pickens v. Coal River Boom & Timber Co., 66 W. Va. 10, 65 S. E. 865, 24 L. R. A. (N. S.), 354; Annotation, 29 L. R. A. (N. S.), 905; Jourolmon v. Massengill, supra; 20 Am. Jur. 105, 106. So our decision in Bradford v. American Nat. Bank et al., supra, may have some bearing here as stare decisis but not as res adjudicata. We, therefore, proceed to consider appellant's several insistences upon their merits.

(1) We think the court had jurisdiction of her person. The record shows that she was served with the process upon the original bill and that Mr. Joe L. Jenkins was appointed guardian ad litem for her and filed a formal answer. It appears the original subpoena to answer was mislaid or lost during the progress of the cause, but the transcript contains the officer's return entered on the rule docket which states that he executed the subpoena by reading it to her and leaving a copy of the bill for her with the record clerk at the Central State Hospital. In her testimony she denied such service, but we think her denial is hardly sufficient to overcome the officer's return and the presumption supporting it. At any

rate, after her restoration as sui juris she filed answers to the original bill and to the supplemental bill, and thereby submitted herself to the jurisdiction of the court. Hull v. Vaughn, 171 Tenn. 642, 649, 107 S. W. (2d) 219, 221; Scholze v. Anderson, 12 Tenn. App. 637, 642, and cases there cited; Gibson's Suits in Chancery (4th Ed.), secs. 222-224.

(2) We think the bill made a case for a sale of appellant's land. Such case was that she had been duly adjudged insane and committed to the Central State Hospital as a pay patient, Code, sec. 4440, and complainant had been properly appointed and qualified as her guardian; and her personalty had been exhausted by what had been paid for her maintenance and what was owing for the costs, expenses, and attorney's fees already incurred; that she was incurably insane with an expectancy of many years and it was necessary to provide for her continued support and maintenance at the Central State Hospital as long as she lived; and that the only way this could be done was by sale of her real estate because it was incapable of producing any income.

Upon a reference and proof the master reported that a sale was manifestly to the interest of the ward and necessary for her support and maintenance. This report was unexcepted to and was confirmed, but the sale was deferred because of the pendency of the other two suits successively prosecuted by Mrs. Bradford.

When those suits were terminated the supplemental bill was filed to bring these new matters before the court; to show that the guardian meanwhile had become further indebted for the ward's maintenance and other expenses, costs, and attorney's fees in all these litigations; and to show that after her restoration Mrs. Bradford had transferred her land to avoid paying any of such indebtedness.

It appeared in the proof that Nevada Lucas deeded the land back to Mrs. Bradford and on April 22, 1942, Mrs. Bradford sold it for $5,000, paid off the $800 mortgage for her attorney's fees, and deposited $1,350 with the Tennessee Title Company under an escrow agreement to protect it on its guaranty of the title against the claims herein; and that this agreement, while denying the justness of these claims, set them out as follows: "State of Tennessee $500.00, American National Bank $250.00, Bass, Berry & Sims $200.00, James Stokes $350.00, Court Costs $43.85."

Thus the decree complained of rests upon both the original and supplemental bill. A supplemental bill, like this one, which brings forth new matter to sustain the relief sought in the original bill, is not a supplemental suit, but grafts such matter into the original suit, incorporates itself with the original bill, and the whole becomes one bill for all the ordinary purposes of litigation. Horton v. Thompson, 3 Tenn. Ch. 575, 580; Smith v. St. Louis Mutual Life Ins. Co., 3 Tenn. Ch. 151, 153; Smith v. St. Louis Mutual Life Ins. Co., 3 Tenn. Ch. 502, 508, 509.

We think the facts averred and proved justified the decree. Since Mrs. Bradford had been duly adjudged insane and committed to the Central State Hospital as a private pay patient, the costs of her maintenance and the other expenses properly incident to the guardianship were a charge upon her estate, which the guardian was bound to pay. Code, secs. 4460, 4478; Central Hospital for the Insane v. Adams, 134 Tenn. 429, 183 S. W. 1032, L. R. A. 1916E, 94; Bradford v. American Nat. Bank et al., supra. The only way these charges could be paid was by sale of the ward's real estate. Such a case comes within our statutes which give the chancery court jur-

254

isdiction, upon application of the guardian of a person of unsound mind, to decree the sale of his property, real or personal, when manifestly for his interest or necessary for his support and maintenance. Code, secs. 9227-9237, 9647-9650; see Union Planters' Nat. Bank & Trust Co. v. Bornds, 168 Tenn. 289, 291, 77 S. W. (2d) 645, 646.

(3) Nor do we think the court's jurisdiction or the guardian's right to proceed in this cause was terminated by the judgment restoring the ward to competence. That judgment, as appears in Bradford v. Ragsdale, supra, was entered in the statutory proceeding provided by Code, secs. 9656-9659, for restoration of persons who have been declared of unsound mind but have afterwards become restored in mind. It was merely a judgment of restoration, the material part of it being as follows: "It is therefore ordered by the Court that the petitioner, Sammie Mays Bradford be and is hereby restored to her status as sui juris, and is fully restored to her previous condition of sanity, and is ordered to make settlement with her Guardian, and her Guardian, the American National Bank is ordered to make settlement with her."

Thus it did not relate back, or avoid the adjudication of insanity, or vacate the appointment of the guardian, or oust the jurisdiction which the chancery court had taken and was exercising in the cause, or end the guardian's right to prosecute the suit, or terminate the guardianship except in so far as that might result as a legal consequence of removal of the ward's disability. That judgment or decree did not go beyond the authority on which it was based, Code, sec. 9659, which provides:

"If the county judge or chairman should be of opinion that the petitioner is of sound mind and competent to control himself and property, the court shall pronounce a decree declaring such person of sound mind, and the

guardianship of said person, if any exist, shall terminate; and he may demand settlement of the guardian. [Ib., sec. 4.]''

Under such statutes relating to termination of guardianships, it is generally recognized that death or resignation of the guardian, death of the ward, or removal of his disability does not terminate the guardianship instantly and absolutely and for all purposes; but that the guardianship continues for the purposes of settlement just as a partnership or a corporation continues, after dissolution, for the purposes of settlement. Such subsequent duration is of course a fiction, but it is necessary to the ends of justice—protection and enforcement of rights that have arisen out of those legal relations. Mitchell v. Penny, 66 W. Va. 660, 63 S. E. 1003, 26 L. R. A. (N. S.) 788, 789, 793, 794, 135 Am. St. Rep. 1046; Pugh v. Jones, 134 Iowa, 746, 112 N. W. 225, 11 L. R. A. (N. S.) 706, 120 Am. St. Rep. 451, 13 Ann. Cas. 499; Lanman v. Lanman, 206 Mass. 488, 92 N. E. 885, 19 Ann. Cas. 508; 25 Am. Jur. 37, 38; In re Woods, 158 Tenn. 383, 389, 13 S. W. (2d) 800, 62 A. L. R. 904.

This is merely a suit to settle the guardianship. It does not involve any debt or claim against Mrs. Bradford except the debts incurred by her guardian for her maintenance and other expenses incident to the guardianship. These are a charge upon her estate which the guardian is bound to pay. The only purpose of this suit is to pay these claims and thereby settle the guardianship; and for that purpose both the guardianship and the court's jurisdiction or authority to deal with the ward's estate must be deemed to continue until final settlement of the guardianship. We so held in Bradford v. American Nat. Bank et al., 25 Tenn. App. 413, 420, 158 S. W. (2d) 366, 370, noted in 17 Tenn. L. Rev. 495-498; see An-

notation, 128 A. L. R. 1386-1389. It is true some of the cases cited in these notes do hold that the ward's restoration as sui juris terminates his guardianship and the court's authority over his estate to order payment of obligations incurred by him prior to his guardianship; but all of them recognize that the guardianship and the court's authority continue for the purpose of settling the guardianship.

(4) We think appellant is in no position to complain that she was denied a trial by jury. Her jury demand seems to have been overlooked and she proceeded to trial without calling it to the attention of the chancellor. Her counsel say "there appears in the Record a demand for jury trial, made by defendant, which demand seems to have been overlooked, as the case never appeared on the jury docket and has continuously remained on the regular trial docket of the court." Her conduct in allowing the case to remain on the nonjury docket and in proceeding to trial without calling her demand to the court's attention constituted a waiver of her right to a trial by jury. Coulter v. Weed Sewing Mach. Co., 71 Tenn. 115; East Tennessee V. & G. R. R. Co. v. Martin, 85 Tenn. 134, 137, 2 S. W. 381, cf. Shelton v. Hickman, 26 Tenn. App. 344, 172 S. W. (2d) 9.

(5) The evidence, we think, does not support appellant's plea of accord and satisfaction. On April 22, 1942, she sold her farm and deposited $1,350 of the proceeds in escrow with the Tennessee Title Company to protect it on its guaranty of the title against the claims here involved, $500 of the deposit being for the State's claim. On May 23, 1942, her counsel sent to Charles H. Nash, Jr., Assistant Commissioner of Institutions, a cashier's check for $250 marked "In full claim Central State Hospital vs. Sammy Mays Bradford." With this check they

sent a letter in which they stated Mrs. Bradford had sold her farm, "received the proceeds," and "nothing could be made out of her"; and made this offer:

" . . . She is willing to pay $250.00 in full settlement of this claim. We feel that the State will be receiving this amount of money which it would never otherwise receive.

"It will be our intention to refuse to pay any other claims or any part of same against her. Hoping that we will be advised that this will be accepted, and with kindest personal regards, we remain. . . . "

Upon the faith of these statements Nash was inclined to recommend acceptance of this compromise offer, and held the check while the proposition was under consideration. He submitted it to one of the assistants to the Attorney General for the State, and also had one or more conferences with counsel for Mrs. Bradford. During these negotiations he made some investigations from which he learned about the escrow deposit. He thereupon had a conference with the Assistant Attorney General and a conference with Mr. James Stokes, attorney for the guardian, and filed the petition for the State in this cause. The check was not cashed and not accepted but was merely held pending the compromise negotiations, which seem to have extended over the period from May when the check was sent until August when the petition was filed.

Counsel, however, contend that upon receiving this check the State had to elect either to accept it or to return it and retaining it, even without cashing it, must be held an acceptance of it and an accord and satisfaction of the State's claim; and they refer to cases holding that where a creditor is offered a check as settlement in full of an unliquidated or disputed claim, his retention of the

check for an unreasonable length of time constitutes an acceptance of it and an accord and satisfaction of his claim. Seidman v. Chicago Eye Shield Co., 267 Ill. App. 77; Annotations, 34 A. L. R. 1035-1058, 75 A. L. R. 905-926.

But the cases recognize that what is an unreasonable time depends on the circumstances of the case. Where after such an offer of a check the parties continue to negotiate to reach an agreement to compromise the claim, it can hardly be said that the offeree must at the same time elect to accept or refuse the check, or that his holding it during such negotiations is unreasonable. Here the check was merely held pending the State's negotiations with counsel and its investigation of whether anything could be made out of Mrs. Bradford. Under such circumstances we think it cannot be said that the State held the check for an unreasonable length of time, or that such holding operated as an acceptance of the check or an accord and satisfaction of the claim.

(6) What has been said above disposes of most of the grounds urged by appellant for a reversal of the chancellor's decree; but it remains to consider some further objection by her against allowance of the claims set out in that decree.

First. It is said that no fee could be allowed solicitors for their services to the guardian because they are not parties to this suit. It is of course true no judgment or decree can be rendered in favor of a person not before the court as a party to the cause. But the chancellor's decree did not undertake to do that; it merely declared the amounts for which the guardian is liable for the services of its solicitors and for which it is entitled to credit in its settlement, and directed a sale so that from the proceeds the guardian may make such settlement,

allowing appellant to make payment and prevent the sale. In suits for partition and administration of trust funds it has long been the practice in this state for the court to allow fees to solicitors to be paid out of the fund without their being formal parties to the cause; and the chancellor's decree but followed this well-established practice.

Second. It is insisted that the guardian should be denied any compensation because it opposed the ward's efforts to be restored to her legal capacity and that its attorney, Mr. Stokes, likewise should be denied any fee. The argument is that a guardian as a fiduciary owes the duty of undivided loyalty to the ward, that opposing the ward's suit for restoration is a breach of that duty, and that such dereliction of duty disentitles the guardian and the attorney representing it to any compensation.

It is true a guardian does owe his ward the duty of undivided loyalty. But that does not mean that a guardian of a mental incompetent must never oppose his application to be relieved of restraint and legal disability. In some cases it would be an act of intolerable oppression for the guardian to oppose such an application, as where it is clear the ward has recovered and is restored in mind; but in other cases the guardian's duty of loyalty would require him to oppose such an application, as where it is clear the ward is not recovered. "It may well be that the most cruel and unfriendly thing that could be done to an icompetent would be to free him from all restraint, and the most beneficent and kindly thing to continue him subject to restraint." In re Larner, 39 Misc. 377, 79 N. Y. S. 836, 838. Where the ward's mental condition is really in doubt and the guardian acts in good faith in opposing his petition for restoration, the guardian is entitled to the reasonable and necessary expenses there-

by incurred. In re Larner, supra; Ensign v. Faxon, 224 Mass. 145, 112 N. E. 948; Palmer v. Palmer, 38 N. H. 418; Annotation, 121 A. L. R. 1501, 1506; 28 Am. Jur. 690.

In Palmer v. Palmer, supra, after saying it is the guardian's duty to assist the ward's application for restoration where there is no doubt he has recovered, the Court continued:

"But it is equally his duty, when the case is such as to admit of question, to present the facts fully to the judge. The interests of the ward, as well as sound reasons of public policy, require that the investigation should not be an ex parte one. The ward is not required or expected to produce evidence tending to show that the cause of guardianship is not removed. If the guardian should refrain from opposition for the reason that he apprehends the result may possibly show that the cause is removed, and he thereby be exposed to loss of the expenses incurred, the consequence will be that in many cases the revocation will be made upon unsatisfactory evidence, and when possibly the interests of the ward require that the guardianship should continue unrevoked. When the guardian, as in this case, proceeds in good faith, and in the exercise of a sound discretion, to try a doubtful question, the recovery of his reasonable expenses incurred in trying it should not be made to depend upon the result." Palmer v. Palmer, 38 N. H. 420.

In the present case it was very doubtful whether the ward had recovered her sanity. The doctors and mental experts thought she was still insane and should be kept and treated at the Central State Hospital. The guardian acted in the utmost good faith, all it and its attorney did to oppose her application was merely to assist the court in a fair investigation by adducing the evidence of the doctors and mental experts. This was no more than the

guardian's duty, under the above authorities; and it is entitled not only to its reasonable compensation but also to its reasonable expenses, including its attorney's fee, necessarily incurred in the litigations prosecuted by Mrs. Bradford.

Third. It is said that the guardian's compensation should not exceed 5% of the amount which came into its hands, which was less than $1,000. While Code, secs. 7782 and 9591, seem to limit the compensation of a trustee to 5% of the amount of his sales and collections, German Bank v. Haller, 103 Tenn. 73, 81, 82, 52 S. W. 288, 290, the compensation of a guardian is controlled not by those sections but by section 8522, which provides that the county or probate court may, in its discretion, make a reasonable allowance and compensation to the guardian for his trouble and expense in settling the business of his ward's estate; and where the settlement is made in the chancery court, that court has the same discretion. Matlock v. Rice, 53 Tenn. 33, 38; Justice v. Morris et al., 24 Tenn. App. 274, 278, 143 S. W. (2d) 105, 107. In view of the circumstances of this case we think the chancellor rightly exercised his discretion and the amount allowed the guardian was not excessive or unreasonable.

Fourth. As we understand, it is not claimed that the amounts allowed for solicitors' fees are too much for the services rendered. The objections to the fee for the guardian ad litem are that the court had no jurisdiction over the person of the ward and that the bill stated no case for a sale. What has been said above is a sufficient response to these objections. The only complaint against the fee for the firm of Bass, Berry & Sims is that such fee should be paid by the guardian and not by appellant. As indicated above, this fee was an expense incident to

the guardianship necessarily incurred by reason of appellant's refusal to settle with her guardian and her attempt to annul the guardianship and hold the guardian for all it had paid out for her maintenance and other expenses under the statutes and the decrees of the county court. Some of the objections to the fee for Mr. Stokes we have already considered. A further objection is that no fee should be allowed him because he has represented adverse interests, first Mays, then the guardian, and also the State.

It is true the relation of client and attorney is one of great confidence and even after its termination the law continues to protect that confidence. An attorney who has once been made the recipient of the confidence of a client concerning a particular matter is thereafter disqualified from acting for any other party adversely interested in the same matter. Ann. Cas. 1912B, 212, 51 A. L. R. 1307, 1312, 126 A. L. R. 2171, 1273.

But it is not pointed out, nor do we see, how this rule is applicable to the conduct of this attorney. He represented Mays in the lunacy proceeding, which seems to have been brought solely to protect Mrs. Bradford. After that proceeding was over and after she had been adjudged insane and her guardian had been appointed, it employed him to represent it in the county court and later in this cause in the chancery court. There was nothing in the former employment that in any wise conflicted with the latter, the purpose of both being merely to protect Mrs. Bradford in her condition and to provide out of her estate for her support and maintenance. Neither was there any conflict between these two employments and this attorney's joining with the Assistant Attorney General in filing the State's claim for her maintenance at the Central State Hospital for the Insane during the

time she was insane and under guardianship. Cf. Shaw v. Bill, 95 U. S. 10, 24 L. Ed. 333. That claim, as we have said, was a charge upon her estate which the guardian was bound to pay. This was so despite her attempt to resist and avoid payment. It was no part of the guardian's duty of loyalty to her to aid in that attempt.

Upon full consideration we find no error in the chancellor's decree and it is in all things affirmed. The cause will be remanded to the chancery court for further proceedings not inconsistent with this opinion. The costs of the appeal are adjudged against appellant, Mrs. Sammie Mays Bradford.

Hickerson, J., concurs.

Howell, J., not participating.