In the Matter of JULES KOHLER, an Incompetent Person. DEPARTMENT OF MENTAL HYGIENE OF THE STATE OF NEW YORK, Petitioner; ANTHONY WILT, as Committee of JULES KOHLER, an Incompetent Person, Respondent.

Supreme Court, Special Term, Washington County, August 27, 1951.

*Nathaniel L. Goldstein, Attorney-General (Frank H. Cronkhite* of counsel), for petitioner.

*T. Cuthell Calderwood* for respondent.

Imrie, J. This matter came on at Washington County Special Term, Hudson Falls, N. Y., on June 15, 1951, by virtue of an order of Mr. Justice Willard L. Best directing Anthony Wilt, as committee of the person and estate of Jules Kohler, an incompetent, to show cause why he should not account for his acts as such committee and be directed to pay a claim for the care and maintenance of the incompetent in the Utica State Hospital. At the same term, the committee filed a petition, with proposed final and supplemental accounts, praying for the settlement of his account and for a direction for him to pay over to himself, as administrator with the will annexed of said Jules Kohler, all moneys or property of the incompetent remaining in his hands as such committee. Arguments were then heard, with certain records as well as memoranda to be filed subsequently.

The incompetent was committed to Utica State Hospital September 28, 1945. On December 27, 1945, by order of this court, Anthony Wilt was appointed committee of his person and estate.

On March 15, 1946, the Department of Mental Hygiene sent to the committee its Form 258 D. M. H., fixing (Mental Hygiene Law, former § 24-a) the sum of $60 per month as the cost of the care and treatment of the patient, determining the committee's ability to pay $30 per month " towards the cost of care and treatment " of the patient, and advising that, if the total payment made in accordance with the direction is less than the actual cost, the amount " you are being charged can be accepted as only a partial payment of the actual cost. * * * In the acceptance of such partial payments, the Department does not waive its right, any time in the future, to collect from the assets

of patients and liable relatives the differences between partial payments made and the actual cost of care and treatment.''

The incompetent died August 7, 1948. On or about September 6, 1949, a demand was made on the committee for a sum for treatment and care of the incompetent at the rate of $60 a month from September 28, 1945, to April 1, 1948, and at $75 monthly from the latter date to August 7, 1948, the date of death, less $1,023, the payments made by committee. Committee had made all payments at the $30 monthly rate except $5.81.

The primary issue is the right of the State to collect reimbursement beyond that already paid by the committee. A secondary question is whether the validity of the claim should be determined on this accounting, or the claim passed upon in Surrogate's Court.

If it is true that about thirteen months elapsed after the date of incompetent's death before notice was given his committee of the claim for additional reimbursement, one can well sympathize with the committee and his attorney in the description of their embarrassment and problems resulting from representations to distributees in France relative to the amount of the net estate, in obtaining from those distributees waivers and powers of attorney in connection with proceedings to probate the will of the deceased incompetent.

However, although the delay may have been as embarrassing and troublesome as is contended, the State cannot be bound in such a matter by an implied waiver or estopped by the laches of department agents, nor can the time elapsed be held to bar recovery.

The notice of March 15, 1946 (258 D. M. H., already referred to) established a liability directly and/or contingently, which the committee was bound to regard; that is, that the care and treatment of his charge would cost $60 a month and that ,the fixed monthly payment of $30 was to be a partial payment only. The proceeding is timely, under the statute, and there appears no question that the estate of the incompetent is indebted to the hospital in the amount of the difference between the $30 payments and the $60 monthly figure of cost. (*Matter of Tripp,* 275 App. Div. 36; *Matter of Hoffman,* 261 App. Div. 556.) I do not find that the record discloses any notification to the committee of a change of the basic cost figure from $60 to $75 a month and for that reason feel that the recovery should be limited as already stated; that is, to the difference between payments made and a cost computed at $60 a month over the whole period.

Counsel for the committee raises the question that notice, Form 258 D. M. H., contained a reference to and extracts from section 24-a of the Mental Hygiene Law, pointing out that that section had been repealed by chapter 747 of the Laws of 1942. The latter statute provided for the repeal of pre-existing section 24-a, but added a new section 24-a, which (except for certain amendments) remained in effect until April 14, 1946, when it was amended and renumbered as present section 24 by chapter 767 of the Laws of 1946. The notice in question was dated March 15, 1946, prior to the renumbering of the section. In any event, the State's right had already accrued and was not lost by the amendment and renumbering. (*Matter of Tripp, supra.*)

I also find that the claim in this matter should properly be considered as against and payable by the committee. The divesting of the authority of a committee by the death of his incompetent charge looks to the future but does not relieve the committee of the performance of obligations already incurred. The adjudication of incompetency placed his property in the custody of this court. (*Matter of Guigues,* 64 N. Y. S. 2d 573; *Matter of Ferris,* 86 App. Div. 559, affd. 176 N. Y. 607; *Matter of Lofthouse,* 3 App. Div. 139.) The State is a preferred creditor under the provisions of subdivision 2 of section 39 of the Mental Hygiene Law.

The committee has already submitted an account, thus complying, in part, with the request of the petitioner. No objection has been made to any item in the account as submitted. There should be an order in this proceeding which will provide for the allowance of the claim of the Utica State Hospital in the sum representing the difference between the payments already made and the cost of the incompetent's care and support at the rate of $60 monthly from the time of his commitment until his death, and directing the committee to pay that sum from the assets in his hands. The order can then provide for the settlement of the committee's account. An order may be submitted for settlement, at which time determination may be had as to committee's compensation and allowances.