Richard N. Dohovah, S.
Decedent was committed to Marcy State Hospital in February, 1957 and remained in that State hospital until her death in June, 1961. The Supreme Court by order entered July 15, 1957 appointed Hazel B. Glass as committee of the incompetent’s person and property and the committee continued in those duties until the death of decedent. After decedent’s death and on July 17, 1961 Hazel B. Grass was duly appointed administratrix of her estate by this court.
During the decedent’s confinement at Marcy State Hospital, a charge was made to the committee for the incompetent’s care and treatment. The committee paid all charges demanded by the State for such care and treatment. The committee fully revealed the assets of the incompetent’s estate and filed an annual account showing income, disbursements and the balance remaining in the committee’s control.
After the incompetent’s death, the committee under date of November 8, 1961, petitioned the Supreme Court for final settlement of her account, notice was given to the State of New York and the account was settled by order of the Supreme Court dated November 20,1961. Although notice was received by the State, a claim was not filed against the committee for any additional moneys allegedly due the State for the care and treatment of the incompetent.
The State did file a claim with the administratrix of the estate under date of November 10,1961, which was immediately rejected by the administratrix and notice of rejection, dated November 10, 1961, was sent to the State.
The administratrix is now seeking judicial settlement of her account. The claim as rejected by the administratrix is the difference between the amount paid by the committee in compliance with the State’s original demand, namely, $3,566.60, and *836 the claim made after the incompetent’s death at the annual reimbursement rate, namely, $7,466.23. The difference in the approximate amount of $3,900 is the subject of this litigation.
This court was advised that the reimbursement rate was determined by the Commissioner of Mental Health, the Director of the Budget and the Commissioner of Social Welfare and is based upon the total cost of treatment for all patients in State hospitals divided by the number of patients thereby resulting in an average cost per patient.
The State bases its claim upon the provisions of section 24 of the Mental Hygiene Law. The estate based its rejection upon the following contentions: (a) that the State failed to object to the committee’s final account; (b) the State was estopped by having accepted an amount less than the reimbursement rate; (c) that the State failed in its proof before this court inasmuch as the State only offered verified and certified documents without any testimony concerning the Commissioner’s discretion or in support of the Commissioner’s discretion.
Subdivision 1 of section 24 of the Mental Hygiene Law permits the Commissioner to charge the committee for the care and treatment of an incompetent at the reimbursement rate or a lesser or greater sum. The same paragraph specifically sets forth that the acceptance of payments at less than the reimbursement rate shall not be construed to release the patient, his estate, committee or guardian. It is, therefore, the finding of this court that the estate’s defense of estoppel is without merit.
Considering next the estate’s objection to the .State’s proof, it is the finding of this court that the method of proving this claim was proper. This finding is made since it appears the State fully complied with the statutory requirements for establishing reimbursement rates and that any question of the Commissioner’s discretion is not within the determination of this court. (Matter of Asker, 284 App. Div. 712.) It should be noted that the Commissioner’s use of his discretion while the decedent was a patient resulted in a charge being made in an amount less than the reimbursement rate. This was done even though the incompetent had limited but sufficient assets to pay for her care and treatment at the reimbursement rate.
The remaining defense to this claim is the failure of the State to claim against the committee for the amounts now claimed against the estate. It seems reasonable to assume that when the State received notice of the judicial settlement of the committee ’s accounts, it determined to file against the estate rather than against the committee. Examination of section 1383 of the Civil Practice Act, section 24 of the Mental Hygiene Law, cases *837 cited by the attorneys and other cases causes this court to conclude that claims for services rendered an incompetent during lifetime can and should properly be presented to the committee and paid by the committee or allowed by the court upon final settlement of the committee’s account.
In Mattter of Kohler (200 Misc. 506) the Supreme Court considered a situation similar to this action. The State had received moneys demanded for the care of an incompetent. After death a claim was made for additional moneys. The court determined two questions: The right of the State to collect reimbursement beyond that already paid by the committee and, secondly, whether the validity of the claim should be determined on the accounting by the committee or the claim passed upon in Surrogate’s Court. The court found that the State should be paid the additional moneys demanded and further found (p. 509): “I also find that the claim in this matter should properly be considered as against and payable by the committee. The divesting of the authority of a committee by the death of his incompetent charge looks to the future but does not relieve the committee of the performance of obligations already incurred.”
In Matter of Guigues (64 N. Y. S. 2d 573) the facts reveal in this case that moneys of an incompetent in the control of a committee were subject to a claim by the State for care of the incompetent during her lifetime and an opposing claim by the Public Administrator that the funds be turned over to bim and the claim of the State to be submitted thereafter to the Public Administrator for approval. In deciding in favor of the State, the court said (p. 574): “ The death of the incompetent did not deprive the court of its power to order paid all valid and legal obligations undertaken by the Committee for her maintenance and medical care during her lifetime. The responsibility of the Commmittee for debts contracted in the course of its duties survived the death of the incompetent. That responsibility must be discharged by the Commmittee to the limit of its capacity before it can be released from liability by the court. ’ ’
The Supreme Court in Matter of Barto (231 N. Y. S. 2d 789) distinguished between claims against the committee and against the estate of the incompetent. It was there found that the claims presented did not arise out of services rendered or liabilities incurred by the committee on behalf of or for the benefit of the deceased incompetent during his lifetime and, therefore, should be presented to the estate. The claim now before this court did result from services rendered to and for the benefit of the deceased incompetent.
*838 Inasmuch as the State, after due notice, failed to object to the account or to make claim against the moneys remaining in the committee’s control, the State must be considered to have waived or relinquished its claim and cannot now recover against the estate of the decedent. Therefore, the claim by the State of New York for additional moneys for care and treatment of the incompetent during her lifetime is disallowed.