616 So.2d 1081 (1993)
MIDLAND NATIONAL BANK AND TRUST, etc., Appellants,
v.
COMERICA TRUST COMPANY OF FLORIDA, N.A., etc., et al., Appellees.
In re GUARDIANSHIP OF: Charles GEORGE, Incapacitated.
COMERICA TRUST COMPANY OF FLORIDA, N.A., as agent for Midlantic National Bank and Trust Co./Florida, Appellant,
v.
Donna George MARCHESE and Mary George, Personal Representatives of the Estate of Charles George, deceased, Appellees.
Nos. 92-0410, 92-0492.
District Court of Appeal of Florida, Fourth District.
April 7, 1993.
Elliot S. Shaw and Kim Marie St. James of Taplin, Howard & Shaw, West Palm Beach, for Midland Nat. Bank and Trust.
*1082 Abraham M. Mora and Katherine A. Nesbitt of Blank, Rome, Comisky & McCauley, West Palm Beach, for Comerica Trust Co. of Florida, N.A. and Jackie George.
Joyce A. Conway of Jones, Foster, Johnston & Stubbs, P.A., and Jane Kreusler-Walsh of Klein & Walsh, P.A., West Palm Beach, for Donna George Marchese and Mary George.
OWEN, WILLIAM C., JR., Senior Judge.
The issue in these cases, which all parties assert is one of first impression in this jurisdiction, is whether, upon the death of an incapacitated ward, unpaid administration expenses and debts of the guardianship, as well as debts of the ward which preexisted creation of the guardianship but which the court had ordered paid, are properly payable from the ward's guardianship estate, prior to the guardian making distribution to the ward's probate estate.
We answer that question in the affirmative and reverse the trial court's order which had held that upon the death of the ward all of the ward's assets in the guardianship with one exception[1] should be distributed to the personal representative of the ward's probate estate, thereby leaving the guardian and those professionals employed by it in administering the guardianship, (as well as those creditors of the ward to whom the court had previously authorized payment), to file appropriate claims in the probate estate.
Midlantic National Bank and Trust Co./Florida[2] (the "guardian"), as guardian of the property of Charles George (the "ward") sought and obtained, on or about September 5, 1991, four separate orders "authorizing and directing" the guardian to pay certain obligations out of funds in the guardianship estate: one authorized the guardian to pay the balance of a term loan owed to Midland National Bank ("Midland") in the amount of $34,494.55, on which the ward had a pre-guardianship personal liability; another authorized the guardian to pay each of the ward's two sons the sum of $17,656.23 on an obligation of the ward which preexisted the guardianship; a third authorized payment of compensation and cost to the guardian of the person and his attorney; the fourth authorized payment of fees and costs to the attorneys for the guardian of the property. Nine days later, and before the guardian had made any payments pursuant to the four orders, the ward died.
Immediately following the ward's death a probate estate was opened and letters of administration issued to the decedent's personal representatives. Subsequently, the guardian filed an amended petition seeking an order authorizing payment of administration expenses and confirming the court's orders of September 5th. Midland filed a motion for an order compelling the guardian to pay it the amount previously directed by the court. The personal representatives applied to the court for directions as to the extent of the guardianship assets which were to be delivered to them for administration in the probate estate. The trial court's order on these several matters, the subject of this appeal, held in substance that (1) upon the death of the ward the guardianship of the property did not automatically terminate but continued, with the court having the authority to receive the petition to terminate and the final report and accounts, and thereafter to judicially resolve any and all objections addressed to those matters upon proper notice and hearing; (2) all matters within the guardianship were to be first resolved including approval of administrative costs incurred in the final stage of the guardianship; and (3) with the exception of a reserve to pay only the cost of administration accruing between the filing of the final returns and the order of *1083 discharge, all guardianship assets in the control of the guardian at the time of ward's death were to be distributed to the personal representatives of the probate estate, leaving the guardians of both the person and of the property and their respective attorneys, as well as all creditors of the guardianship whose claims had been ordered paid, to file claims as creditors in the probate estate. Only the last portion of the order is questioned here.
Midland filed an appeal which is our case 92-0410. The guardian also filed an appeal which is our case 92-0492. While these cases were not consolidated, they arise out of the same order and involve essentially the same issue, and having been orally argued before the same panel of this court, we now treat both with this consolidated opinion.
As noted above, the orders of September 5, 1991 authorized and directed the guardian to pay from guardianship assets two distinct types of obligations  debts of the ward which preexisted the guardianship, and administrative expenses of the guardianship incurred to that time. The order appealed, entered January 16, 1992, is broader since it covers not only those two types of obligations, but also other expenses of the guardianship administration which had been incurred but which the court had not authorized or directed to be paid by the guardian.
Treating first the matter of guardianship administration expenses, as well as those obligations incurred by the guardian for and on behalf of the ward during the guardianship (and either approved by the court or authorized by law without court order), we think it clear under both the guardianship rules and applicable statutes that the guardianship is an unique entity which must, to the extent of its assets, satisfy or discharge all such obligations before the net assets remaining are distributable to the person or persons entitled to them.
This view is consistent with the explicit provisions of rule 5.680, Florida Probate Rules, amended effective October 1, 1991,[3] and which applies to these proceedings. The relevant portions of Rule 5.680 ("termination of guardianship"), are as follows:
(a) Petition for discharge. When the ward ... has died ... the guardian shall file a petition for discharge.
(b) Contents of petition. The petition for discharge shall state:
* * *
(3) The amount of compensation to be paid to the guardian and to the attorneys, accountants, or other agents employed by the guardian.
(c) Final Report. The guardian of the property shall file a final report showing ... amounts reserved for unpaid and anticipated costs and fees. .. .
The rule also provides for a copy of the petition and final report to be served upon the personal representatives of a deceased ward (and others), gives such person or persons 30 days to file objections, and establishes a procedure for a hearing. While the rule does not explicitly provide that the guardian may pay costs and fees from guardianship assets, we think that result is so clearly implied as to leave no room for any other construction. It strikes us as totally illogical for the rule to require the final report to include an amount reserved for unpaid, as well as anticipated, costs and fees if, when approved, such costs and fees are not to be paid by the guardian from guardianship assets.
Our view is also consistent with the provisions of the version of rule 5.680 in effect immediately preceding October 1, 1991. That version of the rule expressly authorized the guardian applying for a discharge "to retain from the funds in his possession a sufficient amount to pay the final cost of administration, including guardian and attorney's fees, regardless of the death of the ward accruing between the filing of [the guardian's] final accounting and the order of discharge." The quoted language *1084 was not intended, as construed by the trial court, to limit the guardian to paying from guardianship funds only those costs of administration accruing between the filing of the final accounting and the final order of discharge. Rather, that language was intended to permit the guardian to pay from guardianship funds the final costs of administration in addition to those administrative costs, including guardian and attorney's fees, which had been included in the final accounting as unpaid and which, either in the absence of objection or after objection and court resolution, would be paid by the guardian prior to distribution. In other words, the quoted language expanded rather than limited the administrative costs that the guardian was authorized to pay from guardianship assets.
The construction placed on the statute by the trial court would permit the guardian to pay from guardianship assets the costs and fees of final administration, and to have credit in the final accounting for any costs and fees paid prior to the ward's death, but would not permit the guardian to pay from guardianship assets nor to have credit in the final accounting for administration expenses owing at the time of the ward's death or administration expenses which accrued after the ward's death and before the filing of the final report. That result would be totally at odds with historical practice and defy common sense and logic. The prior version of rule 5.680 implied that which is now made explicit in the version effective October 1, 1991, i.e., that in filing of the final report[4] the guardian would show the amount disbursed or reserved for administration costs, including guardian and attorney's fees, incurred up to that point in time, as well as those which were anticipated for final administration.
Rule 5.680, Florida Probate Rules, does no more nor less than provide the mechanism to carry out the statutory scheme of section 744.527, Florida Statutes (1991).[5] The language of subsection (2) is, in material respects, identical to the language of rule 5.680(c) Florida Probate Rules, as it existed immediately preceding October 1, 1991. Since the rule in its version immediately preceding October 1, 1991 and section 744.527(2), Florida Statutes, are in identical language it is safe to say that the meaning and intent were identical. The amendment to rule 5.680 which became effective October 1, 1991, while changing the language of the rule, changed neither the meaning nor intent of the rule but merely made explicit that which we think was already implied. Thus, we can safely assert that the rule as amended effective October 1, 1991, and the statute should continue to be accorded identical meaning and intent.
The absence of case authority from this jurisdiction, speaks, we think rather eloquently, in support of our position that the statute and rule are clear, leaving no room for judicial intermeddling. When a guardianship is due to be terminated, the guardianship debts and expenses of administration are paid from guardianship assets and the net assets remaining in the hands of the guardian are turned over to the person entitled thereto, whether it be the ward if termination is by virtue of becoming sui juris or the incapacity removed, or the personal representatives of the ward's probate estate if termination is by virtue of the ward's death. That is the view expressed in the majority of the cases cited to *1085 us from other jurisdictions in which this issue has been considered.
In Tingle v. Cate, 142 Ga. App. 467, 236 S.E.2d 127 (1977) after the death of the ward, the attorneys representing the guardian sought payment of attorney's fees from the guardianship assets. The personal representative of the ward's personal estate argued (as the personal representatives do here) that the gross assets of the guardianship, as opposed to the net guardianship assets, should be distributed to the personal representative for the purpose of paying claims against the decedent's estate in accordance with the priority established under the probate code. In affirming the trial court's rejection of that position, the Georgia Court stated:
We therefore agree with the appellees that debts incurred in the course of the guardianship should be taken into account in the final return of the guardian rather than being carried over into the general administration of the estate where quite possibly the legal consequences might be quite different from those apparently inhering at the time of their occurrence.
Id. 236 S.E.2d at 129.
In that case, the Georgia Court of Appeals cited with approval State v. Greenhaw, 50 Ariz. 436, 72 P.2d 950 (1937), a case in which the Arizona court concluded that administration expenses incurred during the guardianship are payable from guardianship assets after the ward's death and prior to distribution of the remaining assets to the ward's personal representative. In the Greenhaw case the court set forth the issue as follows:
When a person is under a guardianship both of the estate and person and subsequently dies, what portion of his estate is subject to disposal under the law fixing priorities for the estates of decedents? Is it the gross assets in the hands of the guardian at the time of death, or is it the net property left after the guardianship has been properly closed?
Id. at 951. In answering those questions, the court then concluded:
We are of the opinion that the logical answer is that the estate of the decedent consists of whatever assets remain after the legal claims arising by virtue of the guardianship have been properly satisfied. If this were not true, there would be endless confusion created by contests between guardians on the one hand and executors or administrators on the other. The guardian might have created an indebtedness which according to the law, was a proper and prior claim against the estate of the incompetent, and yet by the sudden death of his ward might be utterly defeated by proceedings in the estate of the decedent.
Id.
In a California case, In re Estate of Ehle, 267 Cal. App.2d 24, 72 Cal. Rptr. 474 (1968), the issue was whether a claim must be filed in the estate administration proceedings of a deceased ward in order to obtain payment of guardianship administration expenses outstanding at the time of the ward's death. The court, in answering this in the negative, stated:
Attorneys' fees for services rendered to the guardian on behalf of the ward and the estate of the guardianship are proper expenses of the guardian to be paid out of the guardianship assets, and it is not necessary to file a claim therefor in the estate of a deceased ward in order to protect the right to enforce a claim for such services in the guardianship proceedings... .
Id. 72 Cal. Rptr. at 477.
The trial court felt that the California case was not persuasive because California had a statute which specifically authorized fees rendered to the guardian to be charged against the guardianship assets, but he concluded that Florida statutes have no similar provision. In view of the construction that we have given the statute and the rule, we think the California case is persuasive.
Courts of the states of Minnesota, Tennessee and New York have likewise held, in substance, that guardianship debts and expenses or costs of administration are properly paid from guardianship assets with *1086 only the net or residue distributable to the ward or the ward's personal representatives, although in some instances those decisions were based upon statutory requirements. See, Winjum v. Jesten, 191 Minn. 294, 253 N.W. 881 (1934); American Nat'l Bank v. Bradford, 28 Tenn. App. 239, 188 S.W.2d 971 (1945); Matter of Estate of Matthews, 54 A.D.2d 999, 388 N.Y.S.2d 933 (1976); In re Lambert's Estate, 207 Misc. 307, 136 N.Y.S.2d 685 (N.Y. Sup. Ct. 1954); In re Kohler, 200 Misc. 506, 107 N.Y.S.2d 964 (1951); In re Guigues, 64 N.Y.S.2d 573 (N.Y. Sup. Ct. 1946). But, Cf., In re Estate of Burgeson, 125 Ill.2d 477, 126 Ill.Dec. 954, 532 N.E.2d 825 (Ill. 1988); In re Wright Estate, 156 Mich. App. 1, 401 N.W.2d 288 (1986), reversed on other ground, 430 Mich. 463, 424 N.W.2d 268 (1988).
The case cited by the trial court in support of its decision, Harriss v. Parks, 77 Okla. 197, 187 P. 470 (1920) was an Oklahoma case in which the guardian of a minor who had attained his majority was awarded a fee but failed to provide for payment before discharge. The guardian later sought to impose a lien for the amount of the fee against certain real property which the ward had theretofore sold to a third party. The court in that case simply ruled that no valid lien had been established against the real property in the hands of the third party, an issue which is not involved in this case.
Part of the rationale for the trial court's decision was based upon a concern that payment of the guardian and attorney's fees from guardianship assets prior to distribution to the personal representatives of the probate estate might give to the guardian and its attorneys priority in payment which their claims might not otherwise enjoy as claimants in the probate estate, i.e., grant to them a "preferred creditor status". Aside from the fact that the trial court's concern is readily answerable by reference to both the statute and the rule, we see no inequities as envisioned by the court. Just as administration expenses in a probate estate are accorded a priority above general creditors, the administration expenses of the guardianship, necessarily and reasonably incurred to protect the welfare of the ward and his property while incapacitated, should as a matter of equity enjoy the same priority in the guardianship estate and not be relegated to the status of general unsecured creditors in the probate estate.
Turning now to the matter of the debts of the ward which preexisted creation of the guardianship but which the court had ordered paid, the question is not clearly answered by either rule or statute, nor have we been cited to case authority from this jurisdiction. Nonetheless, on the principle of giving stability to court orders and on the basis of authority from other jurisdictions, we conclude that on the death of an incapacitated ward the guardian who is then under a court order to pay from guardianship funds an obligation of the ward that preexisted the creation of the guardianship, may properly make payment pursuant to that order as part of the guardianship duties.
Two of the orders involved in this case authorized and directed the guardian to pay out of the funds in the guardianship estate certain obligations incurred by the ward prior to the creation of the guardianship. One was a loan to Midland and the other was an obligation to each of the ward's two sons. Those orders were entered after notice and hearing on the guardian's petitions for orders granting such authority. The validity of the orders are not in question. The guardian had no discretion to comply or not. There remained only the ministerial or clerical act of writing and delivering the checks to the persons or entities named in the orders. Had the guardian made payment pursuant to the orders prior to the ward's death, the issue would not have arisen.[6] Can the viability of these otherwise valid orders depend upon the ward being alive at the *1087 moment of the guardian's compliance? We think not. Otherwise, the efficacy of the court's orders authorizing and directing the guardian to expend guardianship assets must necessarily be subject to a matter beyond the court's control, i.e., the fortuitous death of the ward before the guardian has acted. The sanctity of court orders of this type deserves better than to be ipso facto rendered a nullity by the death of the ward before the guardian has complied.
The only cases from other jurisdictions cited to us are not directly on point, but do aid somewhat by analogy. In Pemberton v. Leatherwood, 218 S.W.2d 500 (Tex.Civ. App. 1949), the court held that a guardian has the right, subsequent to the death of the ward, to pay expenses from guardianship assets previously approved by court order. The Supreme Court of Iowa reached a similar conclusion in In the matter of Conservatorship of Britten, 430 N.W.2d 408 (Iowa 1988). In that case the trial court, during the ward's lifetime, had entered an order permitting the payment of sums from conservatorship assets in order to resolve a dispute over gifts made by the conservator to certain of the ward's children. Prior to any payment being made, the ward died. Thereafter, the executor of the deceased ward's estate alleged that the authority of the conservator to make payment from the ward's conservatorship terminated at the ward's death. In determining that the court ordered obligation was properly payable from assets of the conservatorship after the ward's death, the Iowa Supreme Court stated:
The conservator, after the death of the ward, retained the power to adhere to valid adjudications of the court rendered before the death occurred. And the court continued to be empowered to approve the conservator's selection from the court approved alternative for resolving the gift dispute.
Id. at 410.
The underlying rationale of these cases is that valid orders of a court exercising supervisory jurisdiction over the assets of a ward under guardianship and which direct the guardian to pay specific obligations of the guardianship or of the ward, do not lose their efficacy simply by the fact of the ward's death. To allow the intervening death of the ward, without more, to render the court order a nullity would create instability and uncertainty in orders arising out of guardianship proceedings. The vacating or overturning of court orders, if it must occur, is best left to the judiciary.
The personal representatives have characterized the orders as "judgments" against the ward, and thus would have us relegate the beneficiaries of the orders to file claims in the probate estate just as any other "judgment creditor" of a decedent. The orders were not judgments against the ward. They were entered as part of the court's supervisory function over the guardianship affairs. On the basis of a petition, notice and hearing the court determined that the payments were proper and that it was in the ward's interest that payment be made from guardianship assets. The court not only authorized but also directed the guardian to make the payments. Our decision has nothing to do with one who is, indeed, a judgment creditor of the ward.
The personal obligations of the ward which preexisted the creation of the guardianship were certainly not guardianship debts. However, they were debts or obligations which the ward could have, but for his incapacity, paid had he chosen to do so, notwithstanding that such obligations if unpaid would, upon the ward's death, afford the obligees no standing other than that of unsecured creditors subject to claim procedures under the probate code. Whatever the reason may have been for the court to have approved payment of those obligations by the guardian from guardianship assets, the fact remains that had the guardian, prior to the ward's death, made any payments under the court orders such payments would have been properly allowed in the guardian's final report, and would, in effect, have given the respective recipients "preferred creditor status," by virtue of having received payment ahead of creditors claiming against the ward's probate estate. The fortuitous event of the ward's death between the time the orders *1088 were entered and the time payment was made should not alter the situation. Any concern that our decision here will give creditors of the ward the opportunity to be paid from guardianship assets rather than to be relegated, in the event the obligation is not paid prior to the ward's death, to the claim priority established under the probate code, is a matter that should be addressed to and carefully considered by the trial court when considering a petition to authorize the guardian to make payment from guardianship assets.
REVERSED AND REMANDED.
GLICKSTEIN, C.J., and DELL, J., concur.
NOTE: GLICKSTEIN, C.J., did not participate in oral argument but has reviewed the presentation made at that proceeding.
NOTES
[1] The order construed section 744.527(2) Florida Statutes (1991), to permit the guardian to retain only an amount sufficient to pay guardianship and attorney's fees accruing between the filing of the final return and the order of discharge.
[2] Although Comerica Trust Company of Florida, N.A. ("Comerica") is designated in certain court proceedings and the notice of appeal as agent for Midlantic National Bank and Trust Co./Florida, neither the record before us nor the briefs otherwise explained Comerica's role in these proceedings.
[3] In re Amendments to the Florida Probate Rules, 584 So.2d 964 (Fla. 1991). The amendments to the Florida Probate Rules effective January 1, 1993 made no changes in rule 5.680. In re Amendments to the Florida Probate Rules, 607 So.2d 1306 (Fla. 1992).
[4] While designated as final report in the current version of rule 5.680, final accounting in the prior version of rule 5.680, and final returns in section 744.527(2), Florida Statutes, the terms are synonymous.
[5] Final reports and application for discharge; hearing. 

(1) When the court terminates the guardianship, the guardian shall promptly file his final report. If no objections are filed and if it appears that the guardian has made full and complete distribution to the person entitled and has otherwise faithfully discharged his duties, the court shall approve the final report. If objections are filed, the court shall conduct a hearing in the same manner as provided for a hearing on objections to annual guardianship reports.
(2) The guardian applying for discharge is authorized to retain from the funds in his possession a sufficient amount to pay the final costs of administration, including guardian and attorney's fees regardless of the death of the ward, accruing between the filing of his final returns and the order or discharge.
[6] Unless, of course, the argument could be advanced that upon receiving notification of the ward's death, the guardian had an obligation to determine whether the checks had cleared the drawee bank, and if not, to enter a stop payment order.