IN RE: )
)
CARLTON AGIB BLESSING, ) Appeal No.
Deceased, ) 01-A-01-9712-CH-00691
)
LAURA EMILY ) Wilson Chancery
BLESSING WARD, ) No. 10079
)

FILED

December 14, 1998

Cecil W. Crowson
Appellate Court Clerk

Petitioner/Appellant, )
v. )
)
JOHN O. BLESSING, ET UX, )
AND  SARAH L. JONES, )
)
Respondents/Appellees. )


COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE WILSON COUNTY CHANCERY COURT

AT  LEBANON, TENNESSEE


THE HONORABLE C. K. SMITH, CHANCELLOR

THOMAS E. WATTS, JR.
201 4th Avenue North, Suite 1260
P. O. Box 198494
Nashville, Tennessee  37219
ATTORNEY FOR APPELLANT



VESTER NEAL AGEE, SR.
Agee & Agee
104 ½ Public Square
P. O. Box 649
Lebanon, Tennessee  37088-0649
ATTORNEY FOR APPELLEES

AFFIRMED AND REMANDED




WILLIAM B. CAIN, JUDGE

# O P I N I O N

This case involves a family dispute over conservatorship for an elderly gentleman, now deceased.

The record before the court is confused, disorganized and inadequate to facilitate complete appellate review. These proceedings began when, on May 9, 1995, Laura Emily Blessing Ward ("Mrs. Ward"), a resident of Raleigh, North Carolina and the only child of Carlton Agib Blessing ("Carlton Blessing"), filed a petition in the Chancery Court of Wilson County, Tennessee, asking to be appointed conservator of her aging father, then 92 years of age. In her petition she alleged that her father, because of mental and physical impairment, was unable to adequately care for his person and his property and that she was the proper person to be appointed conservator. Mrs. Ward was at the time and continues to be represented by Honorable Thomas E. Watts, Jr. of the Nashville Bar.

On July 13, 1995, the proposed conservatee, then 93 year old Carlton Blessing, acting through his attorney Honorable Thomas C. Binkley of the Nashville Bar, responded denying his need for a conservator and pointing out that his daughter was a resident of North Carolina and could not serve as conservator of his estate because of the restrictions of Tennessee Code Annotated section 35-50-107. While no order appears in the file appointing a guardian ad litem, Honorable Shawn J. McBrien ("Mr. McBrien") of the Wilson County Bar, on July 31, 1995, filed an interim report generally asserting that Carlton Blessing, while aged, hearing impaired and confused, preferred to live in his own home under the care of his stepson, John Orville Blessing and John's wife Brenda Blessing.

On September 7, 1995, John Orville Blessing ("John Blessing"), acting through his attorney, Honorable Vester Neal Agee, Sr. of the Wilson County Bar, filed a motion to intervene in the conservatorship proceeding. In his proposed intervening petition, John Blessing denied any need for a conservator, but asserted that in the event the court determined a conservator to be necessary for

Carlton Blessing, that he, John Blessing, should be named as such conservator. By order of September 27, 1995, the chancellor allowed the intervening petition of John Blessing. On January 10, 1996, John Blessing filed a motion to be appointed temporary conservator of Carlton Blessing pending final disposition of the conservatorship case, alleging medical necessity as a basis for temporary conservatorship. A hearing on this temporary petition was held on January 10 and an order was entered January 23, 1996, appointing John Blessing temporary conservator to authorize medical treatment and setting the case for final hearing on March 7, 1996.

On February 5, 1996, Mrs. Ward filed a motion to amend her petition to suggest that Honorable James H. Rock of Coffee County, Tennessee, be appointed as co-conservator with her of the person and estate of Carlton Blessing. Following this, on March 7, 1996, Mr. McBrien filed what is termed his "final" report as guardian ad litem, recommending that Carlton Blessing be allowed to remain in his home for as long as possible, and that John Blessing be appointed his conservator under proper bond and instructed to prepare a property management plan. This final report of the guardian ad litem was accompanied by letters from Sandra Phillips, P.H.D., Clinical Director of Cumberland Mental Health Services, Inc., and from Joseph E. Hurt, M.D. who opined that due to dementia and vascular disease, Carlton Blessing was incompetent to make personal decisions or manage his own affairs. On March 26, 1996, an order was entered allowing the amendment to the original petition alleging that John Rock should be appointed co-conservator with Mrs. Ward.

Following a hearing, an order was entered by the court on April 15, 1996, which provided in its opening paragraph: "This matter having come before the court on the petition to appoint a conservator on March 7, 1996 and upon hearing the proof of the parties, witnesses, exhibits and the reports of the guardian ad litem, Dr. Sandra Phillips and Dr. Hurt and the statements of counsel finds that the ward is in need of a conservator over his the person and his the property." The court thereupon appointed John Blessing and his wife Brenda as co-conservators of the person and property of Carlton Blessing. The record contains neither a verbatim transcript nor a Tennessee Rules of Appellate Procedure 24(c)

statement of the evidence heard by the chancellor at this March 7, 1996 hearing.

On April 22, 1996, Mrs. Ward filed an extensive motion to reconsider the March 7, 1996 ruling supported by affidavits from both herself and Dr. Joseph E. Hurt with extensive factual allegations therein. On May 3, 1996, the conservators filed an inventory and property management plan along with a response to the April 22 motion of Mrs. Ward, this response being accompanied by an affidavit of John Blessing, asserting certain facts. On May 15, 1996, an order was entered approving the inventory and management plan of the co-conservators and setting bond at $30,000.00. On May 21, 1996, an order was entered acknowledging pending petitions but taking little action. On May 31, 1996, the co-conservators filed an answer to the motion of Mrs. Ward. On June 7, 1996, the guardian ad litem filed an answer to the motion of Mrs. Ward, recommending that same be dismissed.

By order of October 21, 1996, the case was set for trial on November 14, 1996. On November 14, 1996, the guardian ad litem filed his "second final report" which is extensive in its allegation of facts and which concludes with the guardian ad litem's opinion that it was best for the conservatee to maintain the existing status. On December 6, 1996, the guardian ad litem filed a petition for emergency, temporary custody, again asserting facts and recommending that the authority of the co-conservators be suspended until a hearing could be held. On that same date, December 6, 1996, an order was entered providing in part:

> THIS MATTER having come before the Court on the Petition of the Guardian ad Litem and based on the allegations and information received the Court finds that it is in the best interest of the ward, Carlton Blessing, that temporary custody be given to the Department of Human Services for the purpose of placing the Ward into the proper medical facility; That it is in the best interest of the ward that the authority of the Co-conservators be suspended until a hearing can be held on this matter; That the Co-conservators, their agents, friends and or family shall not in any way use, sell, or dispose of any of the assets of the ward; that until further order of the Court the Guardian ad litem shall have authority to act on the best interest of the ward in regards to his medical care and financial affairs. That a hearing in this matter shall be set for December 23rd, 1996 at 9:00 am.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that all previous orders entered in this matter are suspended; that the Department of Human Services shall have temporary custody of the ward; that the powers and authority of the Co-conservators shall be suspended until further orders of the court; that the Co-conservators are restrained from transferring, using, or in any way disposing of the assets of the Ward until further orders of the Court; that the Guardian Ad Litem shall have full authority to handle the medical and financial affairs of the ward until further orders of the court; That this matter shall be set for a hearing on the 23rd day of December.

On December 10, 1996, acting through her attorneys Thomas E. Watts, Jr. and William E. Farmer of the Lebanon Bar, Mrs. Ward filed a motion seeking, among other things, to be made temporary emergency conservator of Carlton Blessing. On December 16, 1996, an order was entered continuing the hearing of the case until May 9, 1997. On December 23, 1996, counsel for John Blessing filed a motion contesting the temporary conservatorship and asking that the case be set for trial. Also, on December 23, 1996, the guardian ad litem filed his "third report" asserting factually that Carlton Blessing should be placed in a nursing home because John and Brenda Blessing, though willing to continue, were no longer able to care for the conservatee and further recommending that his house be sold and the money be used for his care.

On December 31, 1996, counsel for Mrs. Ward filed a motion for reimbursement of attorney fees and expenses pursuant to Tennessee Code Annotated section 34-11-114, supported by the affidavits of Thomas E. Watts, Jr. and William E. Farmer. On January 3, 1997, the guardian ad litem filed a motion seeking the sale of the real and personal property of Carlton Blessing and seeking a determination of attorney fees.

On January 17, 1997, the trial court entered a "findings of fact" relative to the physical condition of Carlton Blessing and the continued use of artificial nutrition to him by nasal-gastric tubes. After reciting the positions of all parties, the court ruled that no further medical intervention by nasal-gastric tube should be done. On January 21, 1997, the following order was entered:

This matter having come before the Court on December 6,

1996, upon Petition for Emergency Custody filed by the Guardian Ad Litem in behalf of the Department of Human Services, at which time the Court entered an Order granting temporary custody of the ward, Carlton Agib Blessing, to the Department of Human Services for the purpose of placing ward into a proper medical facility and set the case for hearing on December 23, 1996, with the duties of the Co-Conservators to be suspended pending final disposition of this cause. Thereafter, on December 23, 1996, this cause came on to be heard and attorney for Conservator filed a Motion for continuance and moved the Court to continue said case upon the grounds set out in said Motion. Thereupon the Court asked the other parties involved if there were any reason why the continuance should not be granted and after some discussion the Court did not act upon the motion for continuance and without a hearing on any of the facts involved in the Petition for Temporary Custody to the Department of Human Services, the Court thereupon appointed Shawn McBrien, the Guardian Ad Litem, as temporary conservator of the ward and set his bond at $5,000.00 pending the final disposition of all the issues in this case.

The ward will remain in the nursing home and the do not resuscitate Order which had been in place in this matter at the nursing home, is to remain in force as agreed by all parties. The ward shall continue to receive artificial feedings as deemed necessary by the treating physician and that the treating physician will be instructed to attempt to take the ward off Haldal and reduce the sedation of the ward and not to place any type of PEG into the Plaintiff at this time. In the event the ward must be heavily sedated in order to receive artificial nutrition, the Temporary Conservator will contact the parties in regard to this action and if the parties are unable to agree on the proper course of action, the Court will be notified in order to make such a decision. The parties agree if deemed necessary by the treating physician or health care professionals, restraints may be used in order to confine the ward.

Thereupon, the Department of Human Services moved the Court that they be permitted to withdraw as a party to this cause which Motion was granted and they are relieved as custodian for the ward. This cause will be heard on May 9, 1997 at 9:00 a.m. for one (1) full day as provided in the Order rendered on November 14, 1996, on all issues as to the permanent conservatorship.

The said John & Brenda Blessing will file an accounting and settlement of the ward's property and turn the assets over to Shawn McBride, as temporary conservator, pending final disposition of this cause.

Entered this the _21_ day of January, 1997.

Before the guardian ad litem had qualified to succeed John and Brenda Blessing as conservator, Carlton Blessing died on January 20, 1997.

It is well to note again, the deficiency of the record in this cause. From the

time of the filing of the original conservatorship petition by Mrs. Ward on May 9, 1995, until after the death of Carlton Blessing on January 20, 1997, no evidence underlying the actions of the trial court is preserved for appellate review. There is no transcript of testimony and no Rule 24(c) statement of fact preserved by anyone, appellant or appellee.

Prior to the death of Carlton Blessing, all counsel representing all parties had applied to the court for attorney fees and expenses to be charged to the conservatorship. All petitions by all parties, except the guardian ad litem, were strenuously objected to by the opposing parties. No adjudication by the court as to any fees or expenses and no adjudication as to the petition of the guardian ad litem to sell personal and real property had occurred prior to the death of Carlton Blessing on January 20, 1997.

Tennessee Code Annotated section 34-13-108(e)(1996) provides in part:

> When the disabled person dies . . . the conservatorship shall terminate. Within one hundred twenty (120) days after the date the conservatorship terminates, the conservator shall file a preliminary final accounting with the court which shall account for all assets, receipts and disbursements from the date of the last accounting until the date the conservatorship terminates, and shall detail the amount of the final distribution to close the conservatorship.

Tennessee Code Annotated section 34-11-113(e)(Supp. 1998) provides in part:

> Notwithstanding any provisions of law to the contrary, the duty of the fiduciary appointed under the provisions of this title shall not cease at the death of the disabled person, but shall continue for the sole purpose of making reasonable and proper funeral arrangements for the disposition of the remains of the disabled person, at death. Upon the death of the disabled person, the fiduciary shall be allowed credits in the accounting for all reasonable expenses of the disabled person's funeral.

The ward having died on January 20, 1997, the former co-conservators filed their final accounting on March 27, 1997 and this was approved by the Clerk & Master on April 10, 1997. On April 16, 1997, Mr. McBrien as guardian ad litem/ conservator, filed his final accounting indicating that as of March 27, 1997, there

remained $11,451.00 in the conservatorship account.

On April 18, 1997, Mrs. Ward filed an objection to the final settlement which states in part:

> 3. The so-called Final Settlement and distribution which was submitted with the Motion does not address the attorney's fees that are still outstanding pursuant to the last hearing of the Chancery Court. Petitioner respectfully submits that no Final Settlement for the Conservatorship can be undertaken and accomplished until the attorneys' fees questions are resolved. The Chancery court ordered a complete hearing on this matter for November 17 and 18, 1997. Petitioner believes the Court cannot approve the Final Settlement of the subject Co-Conservators until after that hearing, or in the alter[n]ative, the Court can take and receive an interim settlement from these Co-Conservators, whose power and duties for the funds and property of Carlton Blessing ended on December 6, 1996. Under that scenario, the Final Settlement would be held open by Mr. Shawn McBrien pending resolution of the attorneys' fees questions. Furthermore, under that proposed scenario, it would be proper for the Chancery Court to Order all funds and property of Carlton Blessing to be held under the control of the Chancery Court until this pending issue is resolved.
>
> Based upon the above styled objections, the Petitioner respectfully requests the Court deny the approval of the Final Settlement which has been submitted and requests the Court require an interim settlement of the Co-Conservators which shows the amount of monies and property which came into the control of Mr. Shawn McBrien on December 6, 1996, pursuant to the previous Order of the Court.
>
> In addition, Petitioner moves the Court to issue an Order to the Probate Court of Wilson County, Tennessee, which in essence will consolidate the pending probate matters into the present Chancery Court action before this Court and will place a hold on all assets of Carlton Blessing, subject to the final action of the Chancery Court concerning the questions of costs and attorneys' fees scheduled for hearing on November 17 and 18, 1997. In the alter[n]ative, Petitioner moves the Court to issue a Restraining Order to the Co-Executors for the Estate of Carlton Blessing, preventing them from disposing of, disbursing, transferring or conveying any property and assets of the Estate of Carlton Blessing.
>
> This action is requested and required to promote and allow uniform justice concerning the payment of the debts and obligations of Carlton Blessing and should be allowed under the rules of equity.

Thus begins the jurisdictional battle between the chancery court involving the conservatorship and the probate court involving the estate of Carlton

Blessing. The record shows that letters testamentary were issued by the Probate Court of Wilson County to John Blessing and Sarah Jones as co-executors of the will of Carlton Blessing.

It is worthy of note that the record shows an excerpt from proceedings held on January 28, 1997 eight days after the death of Carlton Blessing. At this hearing, the chancellor construed the conservatorship statutes to allow him to set fees which he did at $100.00 per hour for all attorneys involved. The record further discloses the following ruling of the chancellor of May 6, 1997:

> THE COURT: The only issue is reasonableness. I read your briefs a great deal. All of you wrote a great brief. I particularly liked yours, Mr. McBrien, and I felt like you were right on point, so I want you to prepare this order.
>
> MR. McBRIEN: Okay. Now, once The Court determines on the 28th whether or not these fees are reasonable, The Court will set an amount for all parties --
>
> THE COURT: That's right.
>
> MR. McBRIEN: -- and at that point it will become a judgment of this Court, in which time those people can take that judgment to file a claim with the estate.
>
> THE COURT: File a claim with the estate. Now, I think you have six months to file a claim. That's why we don't need this thing to continue on and off. I don't know when the appointment for executors and administrators for that came about, but it was after the 1st of the year, so you've got plenty of time. I'm not getting into that. All I'm going to do is set the fees. You all collect them the best way you can. I don't think there is, apparently, any money in the estate to pay them, and I don't think that you have --
>
> MR. McBRIEN: Your Honor, I had that conservatorship for about a month or maybe a month and a half. I think we paid about three bills on it. The case assets we had actually came in after he died, I believe, and they put that at about $10,000 or $11,000 cash money.
>
> THE COURT: I think you just pay all that over to the probate court and all of you file your claims. Now, yours I maybe could do differently with. Are you suggesting I handle yours differently?
>
> MR. McBRIEN: Your Honor, I don't think you can. I think I'm going to have to file a claim just like everybody else.
>
> THE COURT: I kind of feel like if it was enough money, I'd probably have to prorate this anyway between all of you at $11,000 if I did this, so I think the simplest thing to do is everybody just file a claim to probate court. It's going to be dissolving the estate. They're going to sell the property and pay

everybody, but that's what I'm going to do.

> As far as the amounts, I'll have those decided after. All I want to look at now on the 28th day of this month is the amounts requested and any objections that you all have to anybody's request for a fee. The reasonableness is the only issue that will be brought before me on that day.

Despite the findings of May 6, 1997, and the ultimate setting of fees by the chancery court on May 28, 1997, and despite the fact that all assets had passed into the hands of the co-executors under orders of the probate court, these conservatorship proceedings continued until the chancellor entered his final order of September 3, 1997, from which Mrs. Ward appealed.

The battle continued in the court of appeals. This court, by April 23, 1998 order, allowed an affidavit of the deputy clerk of the Probate Court of Wilson County and a certified copy of the order entered by the Probate Court of Wilson County on March 25, 1998, to be considered as post-judgment facts in accordance with Tennessee Rule of Appellate Procedure 14. This affidavit provides, in relevant part:

> (2)    The Will of Carlton Agib Blessing was probated in the Probate court on February 20, 1997, and Notice to Creditors being published in the Lebanon Democrat with the First Notice of Creditors being published on February 27, 1997. That the six (6) month period for filing of claims in the Probate Court expired on August 27, 1997. I further state that I have checked the record in this file and that although the said Laura Emily Blessing Ward filed a Claim in this Court based on a judgment for attorney fees rendered on May 28, 1997, in the Chancery Court of Wilson County, Tennessee, styled Laura Emily Blessing Ward v. Carlton Agib Blessing, No.: 10079. No certified copy or other copy of the Order of Substitution of Parties rendered in the Chancery Court of Wilson County in the case styled Laura Emily Blessing Ward v. Carlton Agib Blessing, No: 10079, has been filed of record in this Court. The statements contained in this Affidavit are made of my own personal knowledge.

The pertinent portion of the March 25, 1998 order of the Probate Judge reads as follows:

> That the case of Laura Emily Blessing Ward v. Carlton Agib Blessing, was pending in the Chancery Court of Wilson County, Tennessee, being Docket No.: 10079, at the time the said Carlton Agib Blessing died on January 20, 1997. That the Will of Carlton Agib Blessing was duly probated in the Probate Court of Wilson

County, Tennessee, on February 27, 1997. The judgment upon which this claim was based was rendered in the Chancery Court of Wilson County, Tennessee, in the cause styled Laura Emily Blessing Ward vs. Carlton Agib Blessing being Docket No.: 10079, on May 28, 1997. That a Suggestion of Death was filed in the Chancery Court in said case on June 5, 1997 and an Order of Substitution of Parties was granted in the Chancery Court on July 2, 1997, substituting the Co-Executors, John O. Blessing and Sarah L. Jones, as Party Defendant instead of Carlton Agib Blessing, deceased. The claim of Laura Emily Blessing Ward was filed in the Probate Court on the 16th day of July, 1997. The Court further finds that the said Laura Emily Blessing Ward did not file a copy or certified copy of the Order reviving said case in the Probate Court of Wilson County, Tennessee, as required by T.C.A. 30-2-320. The Court further finds that the six (6) month period for the filing of claims expired on August 27, 1997 and that no Order or certified copy of the Order of Substitution of the Parties was ever filed in the Probate Court of Wilson County as required by T.C.A. 30-2-320 reviving the cause in the Probate Court and therefore the Court finds that the claim of Laura Emily Blessing Ward based on the judgment rendered in the Chancery Court of Wilson County, Tennessee, in the case styled <u>Laura Emily Blessing Ward v. Carlton Agib Blessing</u>, Docket No.: 10079, is hereby abated and forever barred. The Motion for Summary Judgment is hereby sustained and claim is hereby disallowed and dismissed at the cost of Laura Emily Blessing Ward.

With this extended recitation of the record, we now turn to the issues raised on appeal. Appellant, Laura Emily Blessing Ward, asserts nine issues for appellate review, five of which are as follows:

I.      The trial court erred in awarding the conservators any fee for their attorney.

II.     The trial court erred in not awarding Petitioner the full amount of the fees she spent trying to protect her father and his estate.

III.    The trial court erred in denying Petitioner's motion to alter or amend its award of fees.

IV.     The trial court erred in not considering all available evidence, specifically including the depositions of Drs. Edward L. King and Renata E. Bluhm, in determining the award of attorney's fees to co-conservators and to Petitioner.

. . .

VIII.   The trial court erred in not appointing Laura Emily Blessing

-11-

> Ward, together with a local resident to act as co-conservators for her father after he was removed from the custody of John ("Bud") Blessing and Brenda Blessing.

This court cannot address these five issues but must conclusively presume the factual findings of the trial court to be correct. In a similar context this court has held:

> Our ability to deal with this issue is hampered by the absence of either a transcript of the proceedings in the trial court or a statement of the evidence prepared in accordance with Tenn.R.App.P. 24(c). When a trial court decides a case without a jury, its findings of fact are presumed to be correct unless the evidence in the record preponderates against them. Tenn.R.App.P. 13(d). This court cannot review the facts de novo without an appellate record containing the facts, and therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings. *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn.Ct.App.1989); *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn.Ct.App.1987); *Gotten v. Gotten*, 748 S.W.2d 430, 432 (Tenn.Ct.App.1988).

**Sherrod v. Wix**, 849 S.W.2d 780, 783 (Tenn. App. 1992).

Issue number nine asserted by Appellant states: "The Action of the Trial Court in Ordering the Withholding of Artificial Feeding From Respondent was Completely Without Legal Basis and Void." This is not a tort action and Carlton Agib Blessing is now deceased. The issue is moot.

Appellant's issue number seven asserts: "The Trial Court Erred in Substituting the Co-Executors of Carlton Blessing's Estate for Carlton Blessing in the Conservatorship Proceeding After His Death." By the express provisions of Tennessee Code Annotated section 34-13-108(e), the conservatorship terminates upon the death of the conservatee. It matters little who is thereafter made party to the conservatorship proceedings. The only duty remaining to the fiduciary after the death of the conservatee involves funeral and burial for the conservatee under Tennessee Code Annotated section 34-11-113(b). Post-judgment facts considered under Tennessee Rule of Appellate Procedure 14 indicates that John Blessing, qualified as co-executor of the estate of Carlton Blessing in the Probate Court of Wilson County, thereby assuming responsibility for death and funeral expenses. The issue is without merit.

We turn next to Appellant's isues numbered five and six which are of substance.

V.    The trial court erred in not ordering the sale of Carlton Blessing's house and directing that all of the expenses of the conservatorship be paid before the conservatorship was closed.

VI.    The trial court erred in ordering the conservatorship assets transferred to Mr. Blessing's probate estate before all of the claims against the conservatorship estate had been paid.

In conjunction with Appellants' issues five and six, the court will consider issue number two presented by Appellees, John Blessing and Sarah Jones. Appellees' issue number two states: "Whether or not this court and the trial court (chancery court) have subject matter jurisdiction of this cause since the cause was never revived by either Appellant or Appellee in the Probate Court of Wilson County, Tennessee, which is a separate court being Part II of the General Sessions Court of Wilson County, Tennessee." Resolution of these issues depends on which court has post-death jurisdiction of the estate of Carlton Blessing. Is it the Chancery Court of Wilson County, wherein the conservatorship proceedings occurred or, is it the Probate Court of Wilson County, wherein the estate of the testate decedent is being administered?

The split of authority in sister jurisdictions is so sensitive to the particular state statute that court decisions from other jurisdictions are of only marginal value. The Court of Chancery of Delaware made the following observation:

The text writers and almost but not all of the Courts which have considered our problem have concluded that after the death of the mentally ill person the trustee, absent statutory authority, has no power to pay existing obligations. The creditors must file their claims in the estate proceedings. . . .

While various reasons have been advanced for the conclusion that a trustee may not pay outstanding obligations once the mentally ill person has died, I believe the basic reason for the rule is that absent statutory power the trustee's power arises from and is dependent upon the existence of the mentally ill person. Once that person dies the statutory scheme applicable to decedents' estates comes into play. This, of course, is what happens in the ordinary death case. It is only the fact of a trusteeship that causes the problem here. But as indicated, in the absence of statutory power,

the trustee cannot pay outstanding obligations after the death of the mentally ill person.

> While a few cases support the power of the trustee to pay bills after the death of the mentally ill person they appear to be based on the broad view that the trustee in winding up can pay all outstanding obligations because they were incurred by the trustee as an agent of the Court.

*In Re Bohnstedt*, 125 A.2d 580, 582 (Del. Ch. 1956)(citations omitted).

Following the same reasoning the Washington Court of Appeals held as follows:

> The executor of [the ward's] estate challenges the trial court's order on the ground that the trial court lacked jurisdiction to order payment of a claim made against the guardianship estate after the ward's death. We find that the trial court did lack jurisdiction and reverse.

> A limited guardianship automatically terminates upon the death of the ward. RCW 11.88.140(1)(c). After the death of the ward, the guardian's powers are limited to rendering a final accounting and distributing the property under his control to the proper person. . . . The guardian (unless the guardian is administering the estate of an intestate deceased ward under RCW 11.88.150), has no power to pay debts or obligations owed by the ward's estate. . . . Those creditors whose claims were not paid by the guardian before the death of the ward must submit their claims to the decedent's personal representative. . . . As the Washington Supreme Court stated . . . :
>> The death of the ward having terminated the guardianship, it follows that all unsettled claims, either legal or equitable, created against the estate under the guardianship must be settled out of the estate in the hands of the administrator in due course of administration.

*Guardianship of Heath v. Seattle-First Nat'l Bank*, 632 P.2d 908, 910 (Wash. Ct. App. 1981)(citations omitted).

On the other hand the District Court of Appeals of Florida, in construing Florida court rules and statutes, took a differing view:

> In *Tingle v. Cate*, 142 Ga.App. 467, 236 S.E.2d 127 (1977) after the death of the ward, the attorneys representing the guardian sought payment of attorney's fees from the guardianship assets. The

personal representative of the ward's personal estate argued (as the personal representatives do here) that the gross assets of the guardianship, as opposed to the net guardianship assets, should be distributed to the personal representative for the purpose of paying claims against the decedent's estate in accordance with the priority established under the probate code. In affirming the trial court's rejection of that position, the Georgia Court stated:

> We therefore agree with the appellees that debts incurred in the course of the guardianship should be taken into account in the final return of the guardian rather than being carried over into the general administration of the estate where quite possibly the legal consequences might be quite different from those apparently inhering at the time of their occurrence.

*Id.* 236 S.E.2d at 129.

In that case, the Georgia Court of Appeals cited with approval *State v. Greenhaw*, 50 Ariz. 436, 72 P.2d 950 (1937), a case in which the Arizona court concluded that administration expenses incurred during the guardianship are payable from guardianship assets after the ward's death and prior to distribution of the remaining assets to the ward's personal representative. In the *Greenhaw* case the court set forth the issue as follows:

> When a person is under a guardianship both of the estate and person and subsequently dies, what portion of his estate is subject to disposal under the law fixing priorities for the estates of decedents? Is it the gross assets in the hands of the guardian at the time of death, or is it the net property left after the guardianship has been properly closed?

*Id.* at 951. In answering those questions, the court then concluded:

> We are of the opinion that the logical answer is that the estate of the decedent consists of whatever assets remain after the legal claims arising by virtue of the guardianship have been properly satisfied. If this were not true, there would be endless confusion created by contests between guardians on the one hand and executors or administrators on the other. The guardian might have created an indebtedness which according to the law, was a proper and prior claim against the estate of the incompetent, and yet by the sudden death of his ward might be utterly defeated by proceedings in the estate of the decedent.

*Id.*

*Midland Nat'l Bank and Trust v. Comerica Trust Co.,* 616 So.2d 1081, 1085 (Fla. Dist. Ct. App. 1993).

The ***Midland National Bank*** court from Florida cites ***America National Bank v. Bradford***, 28 Tenn. App. 239, 188 S.W.2d 971 (1945), in support of a statement that "courts of the States of Minnesota, Tennessee and New York have likewise held, in substance, that guardianship debts and expenses or costs of administration are properly paid from guardianship assets with only the net or residue distributable to the ward or the ward's personal representatives, although in some instances those decisions were based upon statutory requirements." ***Midland Nat'l Bank***, 616 So.2d at 1085-86. ***American National Bank*** was a case involving not the death of the ward but a recovery of sanity. Mrs. Bradford was declared insane by proper Davidson County court proceedings in 1938 and committed to Central State Hospital as a private pay patient. ***American Nat'l Bank***, 188 S.W.2d at 974. American National Bank was properly appointed as her guardian. She had little personal property but owned 148 acres of farm land. The guardian undertook its duties and incurred attorney fees and costs necessitating a petition to sell the land of Mrs. Bradford in order to pay for her continued support at Central State Hospital. Her husband intervened as next friend and filed a petition attacking the lunacy proceeding and the appointment of the guardian. ***Id.*** at 975. A circuit court jury adjudged her to be sane and she was released *sui juris*. She thereupon attacked the entire guardianship proceeding with the end result of the case being that the guardian had acted properly under the decree of insanity and was entitled to recover attorney fees and various other costs from the now *sui juris* former ward. ***Id.*** at 980-81.

In the case at bar, the chancery court had preauthorized no expenditure for attorney fees or anything else. While the guardian ad litem had suggested the sale of the real property of the conservatee prior to the death of the conservatee, the court had taken no action to effect such a sale. Only after the January 20, 1997 death of Carlton Blessing did the fight over attorney fees and the limited personal estate of the deceased conservatee begin in earnest. As was the case with the pre-death proceedings, we are favored with no transcript of the evidence nor Rule 24(c) statement nor anything else by which this court may review *de novo* the evidence under which the chancellor sustained all applications for attorney fees by all parties and reduced them to judgment. We must again conclusively presume that the evidence, not preserved for our review, supported

the action of the chancellor.

Unless subject matter jurisdiction abated upon the death of the conservatee, we have no choice but to affirm the chancellor in all respects in view of the extensive powers as to the waiver of specific requirements vested in the chancellor by virtue of Tennessee Code Annotated section 34-11-121(1996). Under Tennessee's 1992 statutory revision of previous guardianship and conservatorship statutes as is evidenced in Tennessee Code Annotated Title 34, chp. 11-13, the conservatorship terminates upon death of the conservatee. Tenn. Code Ann. § 34-13-108(e)(1996). The conservator must, however, make a final settlement within 120 days and the conservatorship court retains jurisdiction for this winding up of the conservatorship. It is obvious from the May 6, 1997 findings of the chancellor, his judgment of June 19, 1997 awarding fees to all parties, and his order of September 3, 1997 overruling all objections thereto, that he believed himself lacking in authority to effect a post-death sale of the home of Carlton Blessing or do anything else other than to, in effect, amend the final settlement of the co-conservators by awarding fees for the conservatorship case. He specifically advised all parties and all attorneys that their remedy for collecting any judgments that he ordered in the conservatorship proceeding was to file proper claims therefor in the probate court.

In view of the broad discretion given the chancellor by the conservatorship statutes, we cannot say that his method of winding up the conservatorship proceedings exceeded subject matter jurisdiction. The correctness or incorrectness of the actions of the Probate Court of Wilson County as reflected by the Rule 14 post-judgment facts recognized in this court, must await an appeal from the judgment of the probate court and is not a proper subject of present appellate adjudication. The judgment of the chancellor is in all respects affirmed and costs are assessed against the appellants.

_____
                                                                    WILLIAM B. CAIN, JUDGE

CONCUR:

_____
BEN H. CANTRELL, PRES. JUDGE, M.S.

_____
HENRY F. TODD, JUDGE